In re Rosemary Louise HOOPS, Debtor.

Rosemary Louise HOOPS, Plaintiff,

v.

FREEDOM FINANCE and Security Industrial Bank, Defendants.

Bankruptcy No. 80 K 0294.

United States Bankruptcy Court, D. Colorado.

April 25, 1980.

Steven J. Timm, Denver, Colo., for plaintiff.

Michael E. Katch, Denver, Colo., for defendant Sec. Indus. Bank.

Richard L. Levine, Director and Counsel, Dept. of Justice, Washington, D. C., for intervenor United States of America.

## MEMORANDUM OPINION UPON DEFENDANT'S MOTION TO DISMISS

GLEN E. KELLER, Jr., Bankruptcy Judge.

Plaintiff seeks by her complaint to invoke the provisions of 11 U.S.C. § 522(f)[1] and avoid the fixing of a lien upon her household goods to the extent that such lien impairs the exemptions granted pursuant to 11 U.S.C. § 522(d). Admitting that it holds a nonpossessory, nonpurchase-money security interest in household goods granted in an agreement dated prior to November 6, 1978, the date of enactment of the Bankruptcy Reform Act of 1978 (Pub.L. 95–598), Defendant Security Industrial Bank seeks dismissal of the complaint. The Defendant asserts that the statute cannot be constitutionally applied to avoid its otherwise admittedly valid security interest[2] under the proscriptions of the Fifth Amendment. After notice pursuant to 28 U.S.C. § 2403 and Rule 20, Local Rules of Bankruptcy Procedure, the United States has intervened to argue in favor of the constitutionality of the statute as sought to be applied in this case.

The merits squarely depend on the continuing vitality of *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). The Defendant reads *Radford*, as being based on the clause of the Fifth Amendment prohibiting the taking of private property for public use without just compensation. However, *Radford*, particularly as subsequently construed by the Supreme Court, appears to rest on substantive due process grounds.[3] In the case at bar, it is doubtful that the government has taken anything for public use as any lien will inure solely to the private benefit of the debtor. Had the government exercised its eminent domain power to purchase the liens held by the Defendant and then transferred the liens to the Debtor, this Court would be obliged to respect the congressional determination of public benefit. *Cf. Berman v. Parker*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). Here, however, the government has merely allowed individual debtors, at their option, to avoid certain creditors' liens. If a taking has occurred, it has been by the Debtor for a private use, not by the government for a public use.

It must be conceded that the boundaries of the taking and due process clauses are not always well marked as *Radford* itself indicates. Under either clause, the substantive issue before the Court involves weighing the strength of the public interest

---

1. (f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

    (1) a judicial lien; or
    (2) a nonpossessory, nonpurchase-money security interest in any—
    (A) household furnishings, household goods wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

    (B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or
    (C) professionally prescribed health aids for the debtor or a dependent of the debtor.

2. The United States takes no position here as to the validity under applicable law of the Defendant's security interests but assumes it *arguendo..*

3. *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, at 457, 57 S.Ct. 556, at 559, 81 L.Ed. 736 (1957) *Wright v. Union Central Ins. Co.*, 304 U.S. 502 n. 23 at 517, 58 S.Ct. 1025 n. 23 at 1034, 82 L.Ed. 1490 (1938).

against the nature and extent of the impairment of the private interest involved. The Court's preference for proceeding under the due process clause is largely historical. It is generally considered to be the only restraint on federal retroactive legislation. See C. Hockman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692 (1960).

■ Preliminarily, it must be decided whether § 522(f) would operate retroactively if applied to security interests which predated its enactment. A substantial body of case law has developed supporting the proposition that legislation is presumed to operate prospectively only.[4] See, e. g., *Claridge Apartments Co. v. United States*, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944); *Gibbons v. Pan American Petroleum Corp.*, 262 F.2d 852 (10th Cir. 1958). Retroactive statutes have been defined as those which take away or impair rights acquired under prior law or which create new disabilities with respect to past transactions. *Lohf v. Casey*, 330 F.Supp. 356 (D.C.Colo. 1971), aff'd. 466 F.2d 618 (10th Cir. 1972). However, the appellate opinion also indicates that a statute is not retroactive merely because it acts upon facts or rights established prior to its passage. Applying these maxims in concrete cases can generate considerable confusion because of the inherent elusiveness of the concept of retroactivity.[5] Here the United States has argued that § 522(f) would not operate retroactively if applied to pre-enactment security interests because it simply acts prospectively on previously acquired security interests. This contention turns retroactivity into a play on words. If § 522(f) were expressly made effective as of January 1, 1970, no one could dispute its retroactivity. The practical effect of the statute so worded would be identical to the statute here if the Plaintiff's construction is correct. *Radford* considered the Frazier-Lemke Act retroactive

because it applied to secured debts created before its passage. No case has been cited to or found by the Court which holds that a statute which authorizes the avoidance of pre-enactment security interests operates prospectively only.

There remains the issue of whether § 522(f) should be construed to avoid retroactive application and, thus, the constitutional problem. The constructional preference for prospectivity may obviously be overridden by a contrary legislative intent. Title I of Pub.L. 95–598 was effective October 1, 1979 (§ 402). The savings provisions (§ 403) make clear that the provisions of the new Code were to govern in all proceedings initiated on and after that date without reference to when the creditors' claims arose. Proceedings initiated before that date were to be governed in all substantive aspects by the Bankruptcy Act. Simply put, the date of the filing of the petition controls which law applies. *Cf. Holt v. Henley*, 232 U.S. 637, 34 S.Ct. 459, 58 L.Ed. 767 (1914). A different result was not intended by Congress. Bankruptcy statutes have traditionally operated retroactively in the sense that they apply to secured claims and creditors' interests which antedate their enactment. See, e. g., *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); *Claridge Apartments Co. v. United States, supra; Campbell v. Alleghany Corp.*, 75 F.2d 947 (4th Cir. 1935). Absent retroactive application and considering the repeal of the Bankruptcy Act, it is arguable that certain creditors of a debtor under the Code have interests not subject to the bankruptcy statutes. Accordingly, this Court concludes that § 522(f) was intended to apply to pre-enactment secured claims.

The constitutional issue must now be squarely faced: Does § 522(f) as applied to security interests created prior to November 6, 1978, violate substantive due process?

---

4. Concededly, courts should interpret legislative pronouncements to avoid constitutional questions. Prospective application would accomplish the avoidance here but raises substantially greater questions.

5. See W. Slawson, *Constitutional and Legislative Considerations in Retroactive Lawmaking*, 48 Cal.L.Rev. 216 (1960). Note also the differences in the trial court and appellate opinions in *Lohf v. Casey* cited in the text.

*Radford* found that the Frazier-Lemke Act[6] was inconsistent with the Federal Constitution. This was depression-spawned legislation designed to prevent foreclosure of farm mortgages by staying such proceedings during a five-year period in which the mortgagor was permitted to remain in possession while paying a fair annual rental which was disbursed among secured and unsecured creditors. At the end of the five-year period, the mortgage could be cancelled by the payment of the appraised price at the beginning of the period or at the end at the option of the mortgagee. The act specifically applied only to mortgages existing at the effective date of the act. Conceding that the power over property interests created after the effective date of the act might be greater than that over preexisting interests, the Court observed 295 U.S. at 589–590, 55 S.Ct. at 863:

> The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligations of contracts. Compare *Mitchell v. Clark*, 110 U.S. 633, 643, 4 S.Ct. 170, 312, 28 L.Ed. 279. But the effect of the act here complained of is not the discharge of Radford's personal obligation. It is the taking of substantive rights in specific property acquired by the bank prior to the act. In order to determine whether rights of that nature have been taken, we must ascertain what the mortgagee's rights were before the passage of the act.

and, further, at 594, 55 S.Ct. at 865–866:

> The controlling purpose of the act is to preserve to the mortgagor the ownership and enjoyment of the farm property. It does not seek primarily a discharge of all personal obligations; a function with which alone bankruptcy acts have heretofore dealt. Nor does it make provision of that nature by prohibiting, limiting, or postponing deficiency judgments, as do

some state laws. Its avowed object is to take from the mortgagee rights in the specific property held as security; and to that end "to scale down the indebtedness" to the present value of the property. As here applied it has taken from the Bank the following property rights recognized by the law of Kentucky:

> (1) The right to retain the lien until the indebtedness thereby secured is paid.

> (2) The right to realize upon the security by a judicial public sale.

> (3) The right to determine when such sale shall be held, subject only to the discretion of the court.

> (4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

> (5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt.

■ Two years later, in *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937), the Supreme Court sustained the amended Frazier-Lemke Act, which affected the rights of mortgagees but not as substantially. *Vinton Branch* did not overrule *Radford* but limited and clarified its holding. The continued viability of *Radford* in determining the proper balance to be struck between the impairment of preexisting security interests and the bankruptcy power is not as important as is its clear holding that the bankruptcy power is subject to the constraints of the Fifth Amendment.[7] This is so because § 522(f) does not merely affect secured claims but authorizes their complete extinction.

6. 48 Stat. 1289 (June 28, 1934).

7. *Vinton Branch* explicitly endorses *Radford* on this point 300 U.S. at 456–457, 57 S.Ct. at 559.

The Supreme Court has often sustained state or local police power regulation that substantially affects the value of private property. See, e. g., *Euclid v. Ambler Realty Corp.*, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926); *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). Section 522(f), however, is rooted in the bankruptcy power, particularly because Congress has no general police power. Thus, the police power cases offer no support for § 522(f) in this case. They do, however, recognize that government regulation can be so onerous to violate the Fifth Amendment. *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922). No burden could be more onerous than complete destruction of a property interest, but even that does not inevitably violate the Fifth Amendment. In *United States v. Caltex, Inc.*, 344 U.S. 149, 73 S.Ct. 200, 97 L.Ed. 157 (1952), the Supreme Court refused to require the government to compensate a property owner whose oil facilities were destroyed in advance of the Japanese invasion of the Philippines. Similarly, in *United States v. Central Eurika Mining Co.*, 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958), a forced closure of a nonessential gold mine during World War II did not require compensation. Emergency situations which enable the government to destroy private property with impunity are not necessarily limited to wartime. *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928), involved destruction by the State of Virginia of infested ornamental trees which posed a serious threat to the state's apple industry. Again, it was held that no compensation was required by the Fifth Amendment. The United States argues that creditors' coercive use of threatened foreclosure on household goods and other necessaries to obtain postbankruptcy reaffirmation of the debt creates such an emergency as will justify complete retroactive application of § 522(f). This Court cannot in fairness place the evil sought to be remedied by § 522(f) in the same class as protection of public health or allocation of national resources in wartime. Even in *Vinton Branch*, the Court failed to use the great depression to support an emergency impairment of secured creditors' rights which was otherwise unconstitutional. Mr. Justice Brandeis said 300 U.S. at 460, 57 S.Ct. at 561: "Whether, in view of the emergency, an absolute stay of three years would have been justified under the bankruptcy power, we have no occasion to decide."

It has been strenuously argued that a lien on household goods is not a "substantial" right within the meaning of *Radford*, and, therefore, that its avoidance cannot violate due process. It is urged that *Radford* involved liens on real property, and § 522(f) affects only liens on personal property. The Court finds no authority for the proposition that the Constitution offers greater protection to mortgages on realty than to other security interests. Indeed, in *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960), the Supreme Court cited *Radford* for the proposition that a lien is a compensable property interest under the Fifth Amendment. The lien taken in *Armstrong* was a mechanic's lien on a ship's hull, clearly personal property, whereas *Radford* involved real estate mortgages. The Supreme Court could find no distinction at 44, 80 S.Ct. at 1566:

No reason has been suggested why the nature of the liens held by petitioners should be regarded as any different, for this purpose, from the interest of the bank held compensable in the *Radford* case.

It is also contended that liens on household goods are of insufficient value (ignoring their coercive effect) to be substantial for purposes of the Fifth Amendment. While the real estate mortgages in *Radford* may have been more valuable than most liens on household goods, the liens in *Radford* were not extinguished. Certain incidents of the liens relating to enforcement were impaired. Moreover, § 522(f) may not merely avoid liens on household goods to the extent of $200.00 per item, as might be indicated by § 522(d)(3). An additional exemption with a dollar ceiling of $7,900.00 for each debtor is available to be applied to any

property under 11 U.S.C. § 522(d)(5). It appears that this total taken with the $200.00 per item exemption on household goods and the exemption for tools of trade can easily be equated with "substantial value" within the *Radford* holding.

On a more fundamental level, however, the Court recoils from the notion that dollar value is the measure of due process. A lien is a substantive property right for purposes of the Fifth Amendment. See *United States v. Armstrong, supra; Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937). If the government destroys it in other than an emergency situation, it violates due process whether the collateral is worth $5 or $5 million.

■ Much argument has been made here that the past abusive uses of liens on household goods justifies a less stringent due process. However, the moral blameworthiness of legal conduct has never been thought to justify the retroactive imposition of liability with respect to such conduct. See *e. g., Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed. 752 (1976). When the government authorizes the destruction of private property, without expressly condemning it, the availability of milder remedies to accomplish the governmental purpose should be taken into account. If the purpose of § 522(f) is to stop the coercive use of liens on household goods in bankruptcy, the Code contains other means to fulfill it. Section 506(a) provides that a claim is secured only to the extent of the value of the collateral. Section 722 provides that a Chapter 7 debtor can redeem exempt household goods from a lien securing a dischargeable consumer debt by paying the creditor the allowed amount of the secured claim. If a debtor is unable to pay the secured claim in a lump sum, he may elect to seek relief under Chapter 13, where deferred payments may be permissible. See § 1325(a)(5)(B). In any event, this limited restriction of the application of § 522(f) will not seriously impair the function of the section.

■ This Court does not lightly conclude that § 522(f), as applied to security interests

created prior to its enactment, violates due process. The power of Congress to establish "uniform laws on the subject of bankruptcies throughout the United States" is broad and evolving. As stated in *Wright v. Union Central Life Insurance Co.*, 304 U.S. 502, 513, 58 S.Ct. 1025, 1032, 82 L.Ed. 1490 (1938):

> The subject of bankruptcies is incapable of final definition. The concept changes. It has been recognized that it is not limited to the connotation of the phrase in England or the States, at the time of the formulation of the Constitution.

But *Radford* holds that the bankruptcy power is subject to the constraints of due process. Due process itself changes, but it has never and will never allow the retroactive extinguishment of valid liens absent the direst of circumstances. As stated in another context by Mr. Justice Holmes in *Pennsylvania Coal Co. v. Mahon, supra*, 260 U.S. at 413, 43 S.Ct. at 159:

> Government could hardly go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits or the contract and due process clauses are gone.

The due process clause should never be used as the instrument of imposing judicial notions of proper policy on the legislative branch. Neither should the judiciary abandon its role in our system. See *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed. 531 (1977). Section 522(f), as applied to preenactment security interests, simply goes too far. The Defendant's motion to dismiss will be granted.