In re Gordon **HAWLEY** and Patricia Hawley, Debtors.

Gordon **HAWLEY** and Patricia Hawley, Plaintiffs,

v.

**AVCO FINANCIAL SERVICES OF OREGON, INC.**, an Oregon Corporation, Defendant.

Bankruptcy No. 379–03360.
Adv. No. 80–0011.

United States Bankruptcy Court,
D. Oregon.

April 25, 1980.

James D. Vick and Bobby S. Mink, Salem, Or., for debtor.

## MEMORANDUM OPINION

HENRY L. HESS, Jr., Bankruptcy Judge.

The issue in this case is whether a security interest created prior to the enactment date of the Bankruptcy Reform Act can be avoided under § 522(f) of that Act.

Plaintiffs Gordon and Patricia Hawley, joint debtors in a bankruptcy filed with this court on November 21, 1979, served a "Complaint for the Release of Security Interest" on Defendant-Avco Financial Services of Oregon in an effort to avoid Avco's nonpossessory, nonpurchase-money security interest in "household furnishings, appliances, and goods." Avco did not file an answer; but instead, submitted a motion for summary judgment supported by an affidavit from Jan Burden, its branch manager. The affidavit contained a statement that the security agreement between plaintiffs and Avco was entered into on October 26, 1978, ten days prior to the enactment date of the law creating the new federal exemptions. Plaintiffs moved to strike portions of the branch manager's affidavit on the ground they were legal opinions and not founded on personal knowledge. A hearing was held in this court on April 8, 1980 to consider both the motion for summary judgment and the motion to strike. Bobby S. Mink, attorney for the plaintiffs, and Willard E. Fox, attorney for defendant, appeared at the hearing. Both attorneys subsequently filed memorandums of law on which this opinion is partially based.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This court, finding no material dispute as to the facts, has jurisdiction under F.R.C.P. 56 to grant Summary Judgment. Even though the statements of law appearing in Avco's supporting Affidavit may be outside the affiant's personal knowledge, this court of course can take judicial notice of the laws in question, and proceed to treat all relevant facts in the record as uncontroverted. Those facts are:

The plaintiffs entered a nonpossessory, nonpurchase-money security agreement with Defendant on October 26, 1978, with said agreement naming certain of the plaintiffs' household furnishings, appliances and goods as collateral;

On November 6, 1978, Congress enacted the Bankruptcy Reform Act of 1978, which made substantial changes in how debtors could exempt property from execution, the types of property exemptable and methods for preserving exemptions. (See 11 U.S.C. § 522).

The new Act (referred to as the Bankruptcy Code) although enacted in November, 1978 was given an effective date of October 1, 1979 and all petitions filed after the effective date were to be governed by the new law. (See Pub.L.No.95–598, Title IV, § 402(a) and 403(a) (Nov. 6, 1978).

On November 21, 1979, plaintiffs filed their petition in bankruptcy, listing among their claimed exemptions in Schedule B–4 those properties which had previously been listed as collateral for their security agreement with Avco.

On January 30, 1980, plaintiffs filed the complaint seeking a court order releasing from the security interest the household goods and appliances claimed as exempt.

No matter which party prevails in this case, the other will justifiably claim a deprivation of right. If this court allows the plaintiffs to avoid the security interest in their exemptable goods, defendant-creditor can argue that the new bankruptcy law is being applied retroactively to destroy a property right which was created by mutual consent before the enactment of the new law. If, on the other hand, the court allows the creditor to exercise its right of repossession under the security agreement, the plaintiff-debtors will claim they are being deprived of a right which all bankruptcy petitioners filing after October 1, 1979 are entitled to—the right to avoid liens under § 522(f) on certain specified goods. Though the equities appear to be equally divided

between these two adversaries, the history and interpretation of bankruptcy legislation is clearly on the side of the defendant.

If the defendant's security interest had been created after October 1, 1979, there would be no question that plaintiffs would be entitled to their relief.

11 U.S.C. § 522(f) states:

the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

\* \* \* \* \* \*

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; . .

■ Similarly, if the security agreement had been entered during the "legislative gap" period—between the November 6, 1978 enactment date and the October 1, 1979 effective date—plaintiffs again would be in a desirable position. This court recently held in a so-called "gap" case that the "one-year delay in making the law effective logically could not diminish Congress' constitutional authority to subject such property to the avoidance powers of the new Code". *In re Platt*, Case No. 379–03042 (B.Ct. Oregon, Judge Donal D. Sullivan, March 21, 1980). Any impairment or affectation of rights after the date of enactment is viewed as prospective and as such, is constitutional so long as the law depriving those rights is not unreasonable, arbitrary or capricious. *SEC v. Albert & Maguire Securities Co.*, 378 F.Supp. 906, 912 (E.D.Pa.1974). *Nebbia v. People of State of New York*, 291 U.S. 502, 525, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934). It is true, as Plaintiffs point out in their Memorandum, that the Second Circuit Court of Appeals in 1960 approved a retroactive application of a bankruptcy statute which rearranged the order of priorities for the distribution of a bankrupt's property. However, that statute applied only to bankruptcy *proceedings* pending at the time of the law's enactment, not to previously-formed contracts. Furthermore, the statute contained a safeguard in that judges were given discretion to apply the new law only to pending proceedings where the judges deemed it "practicable". *New York Credit Men's Adjustment Bureau v. Goldstein*, 276 F.2d 886, 888.

The controlling case here is *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), involving a bankruptcy act amendment which seriously altered mortgage debts in existence prior to the act's passage. In striking down the law as a taking of property without due process of law, the court stated:

"The power over property pledged as security after the date of the act may be greater than over property pledged before; and this act deals only with pre-existing mortgages. Because the act is retroactive, in terms, and, as here applied, purports to take away rights of the mortgagee in specific property, [the Fifth Amendment] of the Constitution is controlling."

*Id.* at 589, 55 S.Ct. at 863.

Two years later, the Supreme Court—indicating that the retroactivity of the statute in *Radford* was its biggest concern—upheld a very similar statute which was not made by its terms to have retroactive effect. *Wright v. Vinton Branch of Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). In *Ginsberg v. Lindel*, 107 F.2d 721 (8th Cir. 1939), a bankruptcy amendment decreased the amount a landlord could recover as a priority under a landlord's lien for past due rent. A plaintiff-landlord who had an extensive lien for past due rent, challenged the constitutionality of the law's application to him and succeeded.

The court said:

"There is nothing contained in the Chandler Act to indicate that Congress intended that section 64, sub. (a) should be construed retrospectively; and in the ab-

sence of explicit language requiring such construction we are not disposed so to construe it, especially when to do so would result in depriving a citizen of a vested right. It is the general rule that a retrospective operation will not be given to a statute which interferes with antecedent rights, unless such be the unequivocal and inflexible import of its terms and the manifest intention of the legislature."

*Id.* at 726.

In a more recent bankruptcy case involving an amendment altering the status of a landlord's lien, the U. S. District Court for the Southern District of Texas said it was "In accord with the prevailing authority . . ." when it determined that the law should not be enforced retroactively so as to apply to the pre-amendment transfer. *Thomas v. Gulfway Shopping Center*, 320 F.Supp. 756, 763 (1970).

■ Creditors obtaining security agreements after the passage of the Bankruptcy Reform Act of 1978 acted at their peril by accepting collateral which the law said could be lost by a debtor's lien avoidance power. They were on notice that their security interests could be lost in any of the types of goods specified in the Code. Creditors prior to the law's passage, however such as the defendant here, had no such notice and no way to anticipate the law would be changing the effectiveness of consensual agreements which had served them so well for so long. To subject their consensual security agreements to a later law which destroyed the effectiveness of those agreements would amount to a retroactive taking of property without due process and accordingly would be unconstitutional.

It is therefore the conclusion of the court that an order should be entered herein granting the defendant-creditor's motion for summary judgment.