**In re Nancy Joy WILLIAMS, Debtor.**

**Nancy Joy WILLIAMS, Plaintiff,**

v.

**BENEFICIAL FINANCE COMPANY OF WASHINGTON, Defendant.**

**Bankruptcy Nos. B–80–00361, A–80–0260.**

United States Bankruptcy Court, E. D. Washington.

Jan. 28, 1981.

Terry J. Bloor of Richard H. Bennett, P. S., Richland, Wash., for plaintiff.

John W. Lohrmann of Freise, Lohrmann & Makus, Walla Walla, Wash., for defendant.

L. WARDEN HANEL, Bankruptcy Judge.

This matter is before the Court on the defendant's motion for judgment on the pleadings[1] in regard to the plaintiff's complaint to avoid a lien in certain household goods, furnishings, and appliances pursuant to 11 U.S.C. § 522(f). Appearing on behalf of the plaintiff was Terry J. Bloor of the firm of Richard H. Bennett, P.S. Appearing on behalf of the defendant was John W. Lohrmann of the firm of Freise, Lohrmann and Makus.

### FACTS

Prior to the effective date of the Bankruptcy Reform Act of 1978 Nancy J. Williams negotiated a loan with Beneficial Finance Company of Washington. In addition to signing a promissory note the plaintiff also gave the defendant a security interest in certain of her household and personal goods. Subsequently, on March 12, 1980, the plaintiff filed a petition for relief under Chapter 7 of Title 11 of the United States Code. In Schedule A–2 she listed

---

1. Beneficial's motion was made pursuant to FRCP 12 as a motion to dismiss. The Court will consider it as properly made under FRBP 712(c).

the defendant as a secured creditor and in Schedule B–4 she listed the collateral subject to that security interest exempt. No objection to those exemptions have been filed. On September 9, 1980 a complaint to void the defendant's lien was filed giving rise to the present controversy. As required by 28 U.S.C. § 2403 the United States was given an opportunity to intervene but has failed to file such a motion.

## ISSUES

There are two interwoven issues for the Court's determination in this matter. First, the Court must determine if 11 U.S.C. § 522(f) should be applied retroactively and secondly, whether such an application violates the due process clause of the Fifth Amendment.

## DISCUSSION

The power to legislate on the subject of bankruptcy is given to Congress in Article 1, section 8, clause 4 of the United States Constitution. It reads in part: "The Congress shall have power ... (t)o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." In accordance with this power the Bankruptcy Reform Act of 1978 was enacted. The portion of that Act now challenged on constitutional grounds is 11 U.S.C. § 522(f). It reads in relevant part:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instru-

ments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor; ....

The defendant in this matter does not question that Congress has the power to pass bankruptcy legislation. Its argument rests rather on the theory that the power to establish bankruptcy legislation is not a power without limits. That it, like all powers, is subject to the due process clause of the Fifth Amendment. The plaintiff argues that the legislative history of the Act indicates that Congress intended to correct a situation which it felt gave the debtor less than the "fresh start" bankruptcy legislation is designed to accomplish and that therefore the holding of certain Supreme Court cases should not be applied to defeat that purpose.

## RETROACTIVE APPLICATION OF 11 U.S.C. § 522(f)

Of the numerous cases [2] which have dealt with the retroactive application of 522(f) only one [3] has held that it should not be so applied. This Court is of the opinion that the majority view is correct.

The history of Pub.L. 95–598 shows that on November 6, 1978 President Carter signed into law the Bankruptcy Reform Act with the proviso that it will not become effective until October 1, 1979. § 402, Pub.L. 95–598, Title IV, Nov. 6, 1978, 92 Stat. 2683. On that date the Bankruptcy Act of 1898, as amended, was repealed, § 401, Title IV Pub.L. 95–598, except as to cases already pending. § 403, Title IV, Pub.L. 95–598, Section 403(a) reads:

A case commenced under the Bankruptcy Act, and all matters and proceedings in or relating to any such case, shall be conducted and determined under such Act as if this Act had not been enacted, and the *substantive rights* of parties in connection with any such bankruptcy case, matter,

2. *In re Rodrock*, 3 B.R. 629, 6 B.C.D. 267 (Bkrtcy., Co. 1980); *In re Hoops*, 3 B.R. 635, 6 B.C.D. 273 (Bkrtcy., Co. 1980); *In re Ambrose*, 4 B.R. 395, 6 B.C.D. 454 (Bkrtcy., Ohio 1980); *In re Lucero*, 4 B.R. 659, 6 B.C.D. 477 (Bkrtcy.,

Co. 1980); *In re Jackson*, 4 B.R. 293, 6 B.C.D. 612 (Bkrtcy., Co. 1980).

3. *In re Pierce*, 4 B.R. 671, 6 B.C.D. 484 (Bkrtcy., Okl. 1980).

or proceeding shall continue to be governed by the law applicable to such case, matter, or proceeding as if the Act had not been enacted. (Emphasis added.)

While the Court is aware that there is a constructional preference for prospective application of legislation this preference may be overridden by contrary legislative intent. *In re Hoops*, 3 B.R. 635, 6 B.C.D. 273 (Bkrtcy., Co. 1980). This Congressional intent is clearly shown in Sec. 403(a). Nowhere in Sec. 403(a) does Congress indicate any intention to have portions of the Code applied to a particular case and portions not applied depending on when the debtor entered into certain transactions.

## DUE PROCESS AND 11 U.S.C. § 522(f)

▉ Having held that Congress intended 522(f) to apply to all cases filed after October 1, 1979 this Court must now decide its constitutionality as applied retroactively. The leading case on the subject is *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). In that case the Supreme Court struck down the now infamous Frazier-Lemke Act of 1933 which permitted a debtor a five year stay of state foreclosure procedure by a bankruptcy court. At the end of the five year period the debtor would be able to keep the property free and clear of the creditor's lien by paying the creditor the appraised value of the property. Although the creditor would receive both the appraised value and rent during the five year period he would be forced to forego rights and remedies available to him under both the provisions of the mortgage and state law.

In reviewing the history of bankruptcy legislation in the United States the Court in holding the amendment unconstitutional announced:

Although each of our national bankruptcy acts followed a major or minor depression, none had, prior to the Frazier-Lemke amendment, sought to compel the holder of a mortgage to surrender to the bankrupt either the possession of the mortgaged property or the title, so long as any part of the debt thereby secured

remained unpaid. 295 U.S. at 581–582, [55 S.Ct. at 859–860].

No bankruptcy act had undertaken to modify in the interest of either the debtor or other creditors any substantive right of the holder of a mortgage valid under federal law. Supervening bankruptcy had, in the interest of other creditors, affected in some respects the *remedies* available to lienholders. 295 U.S. at 583, [55 S.Ct. at 860]. (Emphasis added.)

The bankruptcy power, like the other great substantial powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the States, it is not prohibited from impairing the obligations of contracts. (Citation omitted.) But the effect of the Act here complained of is not the discharge of Radford's personal obligation. *It is the taking of substantive rights in specific property acquired by the Bank prior to the Act.* 295 U.S. at 589–590, [55 S.Ct. at 863–864]. (Emphasis added.)

In the view of this Court *Radford* stands for the proposition that while remedies available to the creditor may be delayed to some extent vis-a-vis the bankruptcy act "substantive rights" in "specific property" may not be taken absent just compensation. Other decisions are in accord. *In re Rodrock*, 3 B.R. 629, 6 B.C.D. 267 (Bkrtcy., Co. 1980); *In re Hoops*, 3 B.R. 635, 6 B.C.D. 273 (Bkrtcy., Co. 1980); *In re Hawley*, 4 B.R. 147, 6 B.C.D. 365 (Bkrtcy., Or. 1980); *In re Lucero*, 4 B.R. 659, 6 B.C.D. 477 (Bkrtcy., Co. 1980); *In re Jackson*, 4 B.R. 293, 6 B.C.D. 612 (Bkrtcy., Co. 1980).

▉ Turning now to the case at hand it is the holding of this Court that the defendant did have substantive rights in specific property as of the effective date of the Bankruptcy Reform Act. Under the laws of Washington, the plaintiff granted the defendant a security interest in certain of her household and personal goods when she signed a security agreement containing a description of the collateral. R.C.W. 62A.9–203. From that moment forward the de-

fendant obtained an interest in certain "specific property" of the plaintiff which, under federal law, is considered a lien. 11 U.S.C. § 101(28).

Secondly, the creation of that lien gave the lienholder certain "substantive rights" in the collateral. In addition to any rights given the lienholder under the provisions of the security agreement there were rights granted it under state law. For example, upon the debtor's default the lienholder had the right to take possession of the collateral, R.C.W. 62A.9–503, and/or to sell, lease or otherwise dispose of it according to defined procedures. R.C.W. 62A.9–504.

The fact that lienholders in many cases do not take advantage of the rights granted them is neither relevant nor material to this Court in its determination of whether the due process clause of the Fifth Amendment has been violated. Nor is the fact that the dollar value of the collateral upon foreclosure may be inconsequential. Regardless of monetary value of the collateral or the number of times secured creditors exercise their rights the fact remains that the lien exists against specific property and cannot be taken away without compensation paid for that right.

In light of the foregoing which the Court adopts as its Findings of Fact and Conclusions of Law pursuant to FRBP 752 it is:

ORDERED that defendant's motion for judgment on the pleadings is hereby granted.

FURTHER ORDERED that counsel for the defendant submit an Order in conformity with the foregoing.