In re Garry GROVES, Virginia Groves, Debtors/Plaintiffs,

v.

HOUSEHOLD FINANCE COMPANY, Defendant.

Thomas (NMN) LOTT, Debtor/Plaintiff,

v.

GENERAL FINANCE CORPORATION, Defendant.

Lawrence ARCHULETA, Shirley Archuleta, Debtors/Plaintiffs,

v.

CIT FINANCIAL SERVICES, INC., Defendant.

Henry Alfred RAYMOND, II., Nancy Elizabeth Raymond, Debtors/Plaintiffs,

v.

HOUSEHOLD FINANCE COMPANY, Defendant.

Bankruptcy Nos. 80Mc1736, 80Mc1398, 80Mc1502 and 80Mc1245.

United States Bankruptcy Court, D. Colorado.

March 10, 1981.

Stanley A. Brinkley, Lamar, Colo., for Groves.

Tuck Young, Pueblo, Colo., for Household Finance Co.

Edward I. Cohen, Denver, Colo., for Lott.

Thomas E. Merrigan, Boulder, Colo., for General Finance Corp.

Charles E. Butler, Pueblo, Colo., for Archuletta.

Victor Moss, Pueblo, Colo., for CIT Financial Services, Inc.

John Shanley, Pueblo, Colo., for Raymond.

## FINDINGS OF FACT, CONCLUSIONS AND ORDER UPON THE DEFENDANTS' MOTIONS TO DISMISS

JOHN F. McGRATH, Bankruptcy Judge.

The four above cases are consolidated for purposes of a single opinion. In each case the Plaintiffs filed Complaints to Void Liens in certain items of household goods pursuant to 11 U.S.C. § 522(f). Garry Groves and Virginia Groves (Groves) filed their petition pursuant to Chapter 7 of Title 11 U.S.C. Thomas Lott (Lott), Lawrence Archuleta and Shirley Archuleta (Archuleta), and Henry Alfred Raymond, II and Nancy Elizabeth Raymond (Raymond) filed cases pursuant to Chapter 13 of Title 11 U.S.C. The Defendants Answered or filed Motions to Dismiss or included Motions to Dismiss in their Answers. (In the Groves case and in the Archuleta case, in addition to filing Answers and Motions to Dismiss, the Defendants Counterclaimed seeking relief from the automatic stay provisions of 11 U.S.C. § 362.) All Answers or Motions question the constitutionality of 11 U.S.C. § 522(f) as applied to them. It is asserted that the avoidance of the Defendants' liens results in the deprivation of a valuable and substantive property right without due process of law as mandated by the Fifth Amendment.

The Bankruptcy Reform Act of 1978 became the law of the land on November 6, 1978, when the President signed the Bill. However, the *effective date* of the Bankruptcy Reform Act of 1978 was October 1, 1979. The evidence in each case indicated that no item of household furnishings, household goods, wearing apparel, appliances, etc. had a value of over $200.00 (in the case of husbands and wives in a joint petition over $400.00). This is the amount of the allowed exemption. All of the Defendants' liens were nonpossessory and non-purchase-money security interests. The date of the security interest in the Groves case was June 7, 1979; in the Lott case was September 13, 1979; in the Archuleta case was February 7, 1979; and in the Raymond case was September 17, 1979. These cases, therefore, concern themselves with the constitutionality of Section 522(f) during the so-called "gap" between the *enactment date* of November 6, 1978 and the *effective date* of the said Act of October 1, 1979. This Court has ruled in *In re Jackson*, and *In re Stevens*, 4 B.R. 293, 6 BCD 612 (Bkrtcy D.Colo.1980) that Section 522(f) was unconstitutional when used to avoid liens created prior to November 6, 1978. This ruling was sustained in the Tenth Circuit on March 2, 1981. *See* citation and discussion of the Tenth Circuit's *Rodrock* decision, *infra*.

The remedy provided by Section 522(f) is the avoidance of liens which encumber exemptions in specific property. In pertinent part, it reads:

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien or interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section if such lien is—

... (2) a nonpossessory, nonpurchase-money security interest in any—
(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family or household use of the debtor or a dependent of the debtor; ..."

The Honorable John P. Moore of this Court in *In re Rodrock*, 3 B.R. 629, 6 BCD 267 (Bkrtcy. D.Colo.1980) focused upon *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) and found that *Radford* stood for the principle that "a substantive right in specific property cannot be substantially impaired by legislation enacted after the right has been created without doing violence to the property owner's right to due process." 3 B.R. 629, 6 BCD at 268. Furthermore, the court explained that any lien is a matter of property without regard to whether real or personal property secures such lien and that the right to hold a lien as property in no way depends upon the pecuniary value of the security. Consequently, the court concluded that application of Sec. 522(f) to void a pre-November 6, 1978 lien would violate the lienholder's right to substantive due process. It was expressly noted that the matter of applying Sec. 522(f) to post-November 6, 1978 liens was left undecided.

Similarly, in *In re Hoops*, 3 B.R. 635, 6 BCD 273 (Bkrtcy. D.Colo.1980) the Honorable Glen E. Keller, Jr. of this Court viewed the *Radford* decision as clearly holding that the bankruptcy power was subject to Fifth Amendment constraints. Pointing out that

avoidance of a pre-November 6, 1978 lien under Sec. 522(f) would not comprise an unconstitutional taking by the government for public use, the court proceeded to analyze the issue under the due process clause. As in *Rodrock*, the court made it clear that a lien was a substantive property right regardless of whether realty or personalty was used as collateral. Moreover, the dollar value of the security would not alter the property rights status of a lien. In the court's opinion, by completely extinguishing property rights created before the date of its enactment, Sec. 522(f) impinged upon the substantive due process rights of the lienholder.

The other Colorado cases, *In re Jackson*, and *In re Stevens*, cited *supra*, followed the *Hoops* and *Rodrock* decisions in relying on *Radford* while reaching the same result as to the unconstitutionality of voiding pre-November 6, 1978 liens under Sec. 522(f). The *Jackson-Stevens* opinion set forth the rights in specific property which *Radford* held to have been unconstitutionally taken from the creditor concerned. These rights were (a) the right to retain a lien until the underlying debt is paid, (b) the right to realize upon the security by taking possession of it and selling it, (c) the right to determine details of the sale such as time and place, (d) the right to protect an interest in the security and (e) the right to control the security during the period of default. Substantially the same rights would be accorded a creditor under the Colorado Uniform Commercial Code, C.R.S., 4–1–101, *et seq.*, (1973). Furthermore, upon the granting of a Sec. 522(f) motion to void, these rights would be lost to the creditor concerned. Since these rights had been acquired by the creditor in question prior to the November 6, 1978 enactment date of The Bankruptcy Reform Act, this Court ruled that due process would be denied if the liens under consideration were voided.

*In re Pierce*, 4 B.R. 671, 6 BCD 484 (Bkrtcy.W.D.Okla.1980) was yet another case holding that Sec. 522(f) could not constitutionally be applied retrospectively to void pre-November 6, 1978 liens. In its

discussion, the court focused on several cases expounding the rule that statutes which would interfere with antecedent property rights are not to be given such retrospective effect unless their terms unequivocally manifest such an intention. Stating that it could find "no terms in the new Bankruptcy Act which by their unequivocal and inflexible import, show a manifest intention of the legislature that this act should be given retrospective effect so as to defeat the vested rights of a lien creditor," 6 BCD at 487, the court felt compelled to hold against pre-enactment application of Sec. 522(f).

In re Hawley, 4 B.R. 147, 6 BCD 365 (Bkrtcy.D.Ore.1980), held, similarly to the aforementioned cases, that an unconstitutional denial of due process would occur if a creditor's consensual security agreement were subjected to a law enacted after the creation of that agreement. Basing its ruling on the proposition that creditors prior to the enactment date of the Bankruptcy Reform Act of 1978 had no notice that certain security interests could be lost under the Code while creditors after such date did have notice, the court made it clear in dicta that a security interest arising between November 6, 1978 and October 1, 1979 could constitutionally be voided. For its assertion that "any impairment or affectation of right after the date of enactment is viewed as prospective and as such, is constitutional so long as the law depriving those rights is not unreasonable, arbitrary, or capricious," 6 BCD at 366, the court cited two cases which, in this Court's estimation, are not supportive. SEC v. Albert & Maguire Securities Co., 378 F.Supp. 906 (E.D.Pa.1974) dealt with certain accounts as affected by the Securities Investor Protection Act of 1970, 15 U.S.C. § 78aaa, et seq. In its opinion, the SEC court pointed out that "The effective date of the 1970 Act was December 30, 1970, and it was not by its terms to have retroactive effect. As applied to petitioners, it must be noted that their margin accounts with Debtor were not opened until the early part of 1972." 378 F.Supp. at 912. Thus, the rights which were allegedly impaired or affected in the SEC case did not arise until over one year after the effective date of the legislation in question. There was no discussion of impairment or affection of right after the date of enactment. Moreover, the second case cited by the Hawley court, Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), merely set forth a definition of due process in the context of deciding whether a state could constitutionally fix the price of milk. There was no issue with respect to retroactive effect nor as to enactment/effective dates.

Bearing in mind the foregoing perspectives with regard to the retroactive application of Sec. 522(f), the discussion may be shifted to focus upon the question at hand, i. e. whether Sec. 522(f) may constitutionally be applied to void liens arising during the interim period or "gap" period existing between the November 6, 1978 enactment date and the October 1, 1979 effective date of The Reform Act.

Judge Moore in In re Lucero, 4 B.R. 659, 6 BCD 477 (Bkrtcy.D.Colo.1980) held Sec. 522(f) is unconstitutional as applied to judicial liens arising during the interim period or "gap". As to the factual distinction between pre-enactment date liens and interim liens, the court explained that:

This factual distinction does not change the law to be applied. The rule of Radford, supra, remains binding and dispositive of the issues. Here, the Defendant acquired substantive rights in specific property prior to the date the new law became effective. Legislation which effects the total deprivation of such rights is unreasonable and has never been countenanced by the Supreme Court. 4 B.R. 659, 6 BCD at 478.

Although this passage would appear to be broad enough to apply to consensual liens arising during the interim period, the court expressly limited its holding to cases where judicial liens are involved. Parenthetically, it must be noted that the Lucero opinion written by Judge Moore of this Court was dated June 16, 1980.

On November 4, 1980, Judge Keller, also of this Court, issued an opinion in the case of *In re Seltzer*, 7 B.R. 80 (Bkrtcy.D.Colo. 1980). The *Seltzer* case dealt with the application of Sec. 522(f) to a consensual lien which arose on August 20, 1979. It would seem that a consensual lien would be entitled to more protection under the Constitution than a judicial lien because a consensual lien is freely given and is supported by consideration, whereas a judicial lien such as in *Lucero* is a result of a judgment being obtained on a previously unsecured obligation which, by the mere recording of the transcript of said judgment, becomes a lien. However, Judge Keller held that Sec. 522(f) could constitutionally be applied to void the lien in question. In the *Seltzer* opinion, Judge Keller, with reference to his *Hoops* opinion, discussed *supra*, explained how he had previously determined "that the intent of the Congress was to apply the provisions of Sec. 522(f) retroactively in violation of the proscription of *Radford* . . ." 7 B.R. at 82. Moreover, the *Seltzer* opinion acknowledged *Lucero* wherein the rule of *Radford* was applied to hold the application of Sec. 522(f) to an interim period judicial lien unconstitutional. Curiously, the *Seltzer* opinion later stated that "*Radford, supra,* does not supply sustenance to the objection here. The *Radford* and *Hoops* retroactivity is dissimilar to that in the present case." *Id.* Thus, the court's statements in *Seltzer* indicate that: (1) as to pre-November 6, 1978 nonpossessory, nonpurchase-money liens, (*Hoops*), Congress intended Sec. 522(f) to be retroactively applied in violation of the *Radford* principle; (2) as to interim period or "gap" liens of a similar character (*Seltzer*), Sec. 522(f) is somehow not being retroactively applied so that the *Radford* principle is rendered inapposite.

Subsequent to *Seltzer*, in *In re Wells*, 7 B.R. 875 (Bkrtcy.D.Colo.1980), Judge Moore felt obligated to follow the cases holding that "the various judges who sit in the same court should not attempt to overrule the decisions of each other . . . except for the most cogent reasons." *Rojas-Gutierrez v. Hoy*, 161 F.Supp. 448 (S.D.Cal.1958). As a result, Judge Moore adopted the *Seltzer* result in the interests of uniformity and fairness despite the realization that he might have concluded differently on the merits of the case.

Recently, the U.S. Court of Appeals for the Tenth Circuit declared that:

> Congress intended for substantive provisions of the Reform Act, such as Section 522(f)(2), to be given retroactive effect to the end that such statutory provisions govern security interests that came into being before the *effective date* of the Reform Act.

> Having determined that Section 522(f)(2) should be given retroactive effect, we find nothing in the Reform Act itself to indicate that Congress intended for the Reform Act to be given only a limited retroactive effect, i. e., to a particular date, as, for example, November 6, 1978, the enactment date of the Reform Act. The Reform Act is either to be retroactively applied, or to be applied only in a prospective manner. We believe it was Congress' intent to apply the Reform Act retroactively. Accordingly, we agree with the holding of the Colorado Bankruptcy Court that Congress intended the Reform Act to be retroactively applied to the creditors' interest here involved. *Rodrock v. Security Industrial Bank*, 642 F.2d 1193, consolidated with *Schulte v. Beneficial Finance of Kansas, Inc.*, 642 F.2d 1193 (10th Cir., 1981) (emphasis supplied).

Although the creditors' interest involved in the Tenth Circuit's opinion all predated November 6, 1978, the court was unequivocal in its assertions that the Reform Act must either be retroactively or prospectively applied and that Congress intended the provisions of the Reform Act to be retroactively applied to liens that came into being before the *effective date* (October 1, 1979) of the Reform Act. There is no indication of, nor can this Court discern, some form of distinction such that application of Sec. 522(f) to pre-November 6, 1978 liens is retroactive whereas application of Sec. 522(f) to interim

period or "gap" liens is not retroactive; application of Sec. 522(f) to any lien arising prior to October 1, 1979 is, therefore, retroactive. Consequently, the *Radford* principle repeatedly referred to above remains binding and dictates that Congress may not, by legislation, completely take for the benefit of a debtor a creditor's substantive rights in specific property which were acquired prior to the effective date of the legislation.

In sum, this Court respectfully disagrees with the result reached by Judge Keller in *Seltzer* and, furthermore, sincerely feels that it cannot follow the *Seltzer* result pursuant to the reasoning of Judge Moore in the *Wells* case. This is especially true in view of the *Radford* principle and language in the Tenth Circuit's recent *Rodrock* opinion which indicates that any effect given to the Reform Act prior to the effective date of October 1, 1979 is, indeed, retroactive.

WHEREFORE, IT IS ORDERED that the Motions to Dismiss the complaint be and the same are hereby granted, and the said complaints be and the same are hereby dismissed, and it is

FURTHER ORDERED that the Defendant, Household Finance Company, is granted relief from the stay provisions of Sec. 362 in the Groves Case, 80 Mc 1736, and it is

FURTHER ORDERED that the Defendant, CIT Financial Services, Inc., be and the same is hereby denied relief from stay in the Archuleta Case, 80 Mc 1502, since it is provided for in the Chapter 13 Plan confirmed by this Court.