In re Noval James JACKSON and Jerrie (NMN) Jackson, Debtors.

Noval James JACKSON and Jerrie (NMN) Jackson, Plaintiffs,

v.

SECURITY INDUSTRIAL BANK, Defendant.

In re Paul Leroy STEVENS and Sara Ann Stevens, Debtors.

Paul Leroy STEVENS and Sara Ann Stevens, Plaintiffs,

v.

LIBERTY LOAN CORPORATION, Defendant.

Bankruptcy Nos. 80 C 0178, 80 Mc 0056.

United States Bankruptcy Court, D. Colorado.

May 19, 1980.

Edward I. Cohen, Denver, Colo., for plaintiffs.

Michael E. Katch, Denver, Colo., for defendants.

Richard O. Levine, Director and Counsel, Dept. of Justice, Washington, D.C., for Intervenor U.S.

Before JOHN F. McGRATH and PATRICIA ANN CLARK, Bankruptcy Judges.

### FINDINGS, CONCLUSIONS AND ORDER UPON THE DEFENDANTS' MOTIONS TO DISMISS

The matters before the Court are the defendants' motions to dismiss the plaintiffs' complaints to void their liens in certain items of household goods under 11 U.S.C. 522(f). The defendants contend that an application of Section 522(f) to their security interest would deprive them of a substantive property right in violation of the due process clause of the Fifth Amendment. Since the issue presented in each case is identical, the cases have been combined for disposition.

The facts are as follows. Prior to November 6, 1978 the plaintiffs (Debtors herein) in each case obtained a loan from the defendants (Creditors herein) and granted them a security interest in certain items of household goods as collateral for such loan. No item of collateral exceeded $200.00 in value. On November 6, 1978 the President signed the Bankruptcy Reform Act of 1978 (P.L. 95–598, 92 Stat. 2549), Title I of which codified and enacted the new Bankruptcy Code. Section 402(a) of the Reform Act (P.L. 95–598 § 402(a)) provides: "[T]his Act shall take effect on October 1, 1979."

Subsequent to the effective date of the Reform Act, each of the Debtors filed a petition under Chapter 13 seeking an adjustment of their debts. They also filed a complaint under Section 522(f) to avoid the defendants' nonpossessory, nonpurchase-money security interest in their household goods otherwise exempt. If the Debtors are successful in avoiding the liens, the defendants would be relegated to the status of unsecured creditors entitled to receive one dollar under the Debtors' Chapter 13 Plans. Section 522(f) which the plaintiffs seek to utilize to avoid the defendants' liens provides in part:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

.     .     .     .     .

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

.     .     .     .     .

The defendants contend that the Fifth Amendment to the Constitution precludes the retroactive application of Section 522(f) to void their security interests in the Debtors' household goods. The defendants claim that prior to enactment of the Reform act on November 6, 1978 they had acquired substantive rights in specific property of the Debtors pursuant to C.R.S.1973, § 4–9–101 *et seq.*, the Colorado Uniform Commercial Code, Secured Transactions. The defendants contend that their lien rights are vested property rights which may not be taken under the later enacted Section 522(f) of the Code without just compensation. The intervenor United States contends that voiding the defendants' liens would not deprive them of substantial and substantive rights in violation of the Fifth Amendment. The Government argues that any alteration of the bank's contract rights pursuant to Section 522(f) is a valid exercise of Congressional power under the Bankruptcy Clause of the Constitution and does not constitute an unconstitutional taking. Finally, the government claims that the Code's history requires Section 522(f) to be applied retroactively.

It is clear that Congress intended the Reform Act to be applied to liens created before November 6, 1978, in cases filed on or after October 1, 1979. The former Bankruptcy Act has been repealed except for cases commenced prior to October 1, 1979 (P.L. 95–598, Title IV, § 403, 92 Stat. 2683). A refusal to apply provisions of the Reform Act to cases commenced after October 1, 1979 would result in a hiatus in the bankruptcy laws. The retroactive application of the Reform Act was discussed in the cases of *Rodrock v. Security Industrial Bank*, 3 B.R. 629, No. 80 M 0014 (D.Colo.Bankruptcy April 25, 1980), *Knezel v. Security Industrial Bank*, 3 B.R. 629, 80 M 0024 (D.Colo. Bankruptcy April 25, 1980) and *Hoops v. Freedom Finance and Security Industrial Bank*, 3 B.R. 635, No. 80 K 0294 (D.Colo. Bankruptcy April 25, 1980). The Court concurs with the reasoning on this point enunciated in these cases. As a result, Section 522(f), if constitutional, must be retroactively applied to the defendants' liens.

Does Section 522(f) of the Bankruptcy Code offend the due process guaranty of the Fifth Amendment by destroying rights conferred by the Creditors' security interests? Clearly, Congress has the broad power "To establish . . . uniform laws on the subject of Bankruptcies throughout the United States." U.S.Const. art. I, § 8, cl. 4. The question is whether Section 522(f) modifies the Creditors' rights, remedial or substantive, to such an extent as to deny them due process of law.

Several cases in which the Supreme Court considered the constitutionality of the retroactive application of statutes will be examined. *Continental Illinois Nat. Bank & T. Co. v. Chicago Etc., Co.*, 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935) concerned the reorganization of a railroad under Section 77 of the former Bankruptcy Act. The Supreme Court, by relying upon Congress's express power to pass uniform laws on bankruptcy, rejected the creditors' contentions that an injunction restraining the sale of collateral securing their notes violated the Fifth Amendment. The Court sustained this exercise of bankruptcy power because "The injunction here goes no further than to delay the enforcement of the contract. It affects only the remedy." *Id.*, p. 681, 55 S.Ct. p. 608. The Court noted that the statute did not directly impair the obligation of the contracts themselves.

*Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937) concerned a section of the former Bankruptcy Act which limited the claim of a landlord for indemnity under a lease to three years' rent. The Supreme Court indicated that the landlord did not have a lien on the debtor's assets and noted that she would get back her property. Therefore, Congress had not taken away all of her remedies under the lease. Concluding the statute did not violate the Fifth Amendment, the Court stated at page 452, 57 S.Ct. at page 301:

> While . . . the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its

enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets.

In *Gelfert v. National City Bank of New York*, 313 U.S. 221, 61 S.Ct. 898, 85 L.Ed. 1299 (1941), the Supreme Court sustained a New York statute limiting the right of creditors to recover a deficiency after a sale of mortgaged property. The Court at page 231, 61 S.Ct. at page 901–902 stated:

"Not only are existing laws read into contracts in order to fix obligations as between the parties, the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order." (cite omitted)

However, the Court stated clearly that the New York statute:

"[C]annot fairly be said to do more than restrict the mortgagee to that for which he contracted, namely, payment in full." Here . . . the obligation of the mortgagee's contract is recognized; the statute does no more than limit "that right so as to prevent his obtaining more than his due." (cites omitted) *Id.* at pp. 234, 235, 61 S.Ct. at p. 903.

Thus, generally, rights which may be constitutionally altered by retroactive statutes include rights relating to the timing of the enforcement of a remedy and the extent of the remedy so long as any alteration is not unreasonable and arbitrary. Rights which are constitutionally protected include rights to specific property, to realize upon security for a debt, and to avoid having a contract completely destroyed.

Is the voiding of the defendants' liens on the Debtors' household goods, which are nonpossessory, nonpurchase-money security interests under Colorado law, prohibited by the Fifth Amendment? The Supreme Court considered the question of whether a mortgagee's lien on real property is constitutionally protected in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) and in *Wright v. Vinton Branch of Mountain*

*Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937). Those cases involved two different enactments of the Frazier-Lemke Act which concerned proceedings in bankruptcy. *Radford* declared the first enactment unconstitutional while *Vinton Branch* upheld the amended version.

In *Radford*, the Court held that because the first Frazier-Lemke Act "[P]urports to take away rights of the mortgagee in specific property" retroactively, that bankruptcy legislation is invalidated under the Fifth Amendment. *Id.* p. 589, 55 S.Ct. p. 863. The rights recognized by state law taken from the creditor in *Radford* were:

(1) The right to retain the lien until the indebtedness thereby secured is paid.

(2) The right to realize upon the security by judicial public sale.

(3) The right to determine when such sale shall be held, subject only to the discretion of the court.

(4) The right to protect its interest in the property by bidding at such sale whenever held, and thus to assure having the mortgaged property devoted primarily to the satisfaction of the debt, either through receipt of the proceeds of a fair competitive sale or by taking the property itself.

(5) The right to control meanwhile the property during the period of default, subject only to the discretion of the court, and to have the rents and profits collected by a receiver for the satisfaction of the debt. *Id.* pp. 594 and 595, 55 S.Ct. pp. 865–866.

Under the Colorado Uniform Commercial Code, the defendants have substantially the same rights as the mortgagee in *Radford* and those rights would be completely lost if their liens were avoided under Section 522(f).

In *Vinton Branch* the Court held constitutional the amended Frazier-Lemke Act, which restored three of the five rights which were taken from the creditor by the first Act. However, that case is not pertinent to this matter. Section 522(f), if enforced, would completely void the defend-

ants' liens thereby taking all of their rights recognized by Colorado law and by the Court in *Radford*. This distinction between the effect of the amended Frazier-Lemke Act and Section 522(f) is clarified by the Supreme Court's decision in *John Hancock Mut. Life Ins. Co. v. Bartels*, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176 (1939) where it stated at page 187, 60 S.Ct. at page 224:

> The scheme of the [amended Frazier-Lemke Act] is designed to provide an orderly procedure so as to give whatever relief may properly be afforded to the distressed farmer-debtor, while protecting the interests of his creditors by assuring the fair application of whatever property the debtor has to the payment of their claims, the priorities and *liens of secured creditors being preserved*. (insert added, emphasis added, cites omitted)

As noted, under Section 522(f) a creditor's lien can be avoided to the extent of a debtor's exemptions under Section 522(b). In the instant case, since no item of household goods exceeds $200.00 in value, the liens could be avoided in their entirety. The liens would not be preserved.

The government contends that the *Radford* case is moribund. However, the 95th Congress believed *Radford* was still viable when enacting the Bankruptcy Code. The legislative history of Section 361 of the Code states:

> The concept of adequate protection is derived from the fifth amendment protection of property interests as enunciated by the Supreme Court. See *Wright v. Union Central Life Ins. Co.*, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184 (1940); *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). S.Rep. No. 95–989, 95 Cong.2d Sess. (1978), p. 49, U.S.Code Cong. & Admin.News 1978, p. 5835.

That secured creditors should not be denied the benefit of their bargain is, of course, the basis of adequate protection. Any evidence that the Supreme Court has ignored *Radford* is not persuasive (see, e. g., *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)). The *Radford* opinion has been neither overruled nor weakened. *Rodrock, Knezel*, and *Hoops*.

However, *Radford* relates to rights of lienors of real property and not to rights of lienors of personalty. Are the Creditors' rights comparable to the realty mortgagee's rights in *Radford*? In *Adair v. Bank of America Nat. Trust & Savings Ass'n*, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889 (1938), the Supreme Court approved, under the amended Frazier-Lemke Act, the deduction of the costs of harvesting a crop from the gross proceeds of the crop's sale while the crop was subject to a chattel mortgage. Although the question of the due process rights of the chattel mortgagee was not directly at issue, the Court cited *Vinton Branch* as authority for its decision and gave no indication that the creditor, secured by chattels, had fewer rights than or different rights from the creditor secured by realty. Further, as stated in *Rodrock* and *Knezel* at page 632:

> Any lien is a matter of property and not a mere matter of procedure. (cites omitted) Moreover, for constitutional purposes, it makes no difference whether liens are on personal property or real property. (cites omitted)

Finally, Section 522 allows the Debtors to avoid the fixing of a *lien*. "Lien" is defined by the Code to mean a "[C]harge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(28). This definition of lien includes security interests. H.R. No. 95–595, 95th Cong. 1st Sess. (1977), p. 312 and S.Rep. No. 95–989, 95th Cong. 2d Sess. (1978), p. 25. As defined in the Code, "security interest" is similar to that same term in the Colorado Uniform Commercial Code and includes all U.C.C. security interests. 11 U.S.C. § 101(37), C.R.S.1973, 4–1–201(37), as amended, H.R. No. 95–595, 95th Cong. 1st Sess. (1977), p. 314, U.S.Code Cong. & Admin.News 1978, p. 5787 and S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978), p. 26,

U.S.Code Cong. & Admin.News 1978, p. 5787. However, the term as used in the Bankruptcy Code is broader in that it includes real property mortgages. *Id.* Hence, the Code itself equates a security interest in personal property with a security interest in real property.

Not all retroactive statutes are unconstitutional. Case law discloses that the Supreme Court balances considerations to determine whether the retroactive application of a statute is unreasonable and denies due process of law. Under Colorado law, the Creditors' liens give them rights in specific property of the Debtors. That property is security for the debts owed them. The voiding of the defendants' liens would not simply affect some of their remedies; it would completely destroy their contracts with the Debtors. Although Congress may affect contracts through the exercise of its bankruptcy power, it may not completely destroy them. Congress's bankruptcy power is limited by the due process clause of the Fifth Amendment. *Radford* clearly demonstrates that the Creditors' liens on the Debtors' household goods may not be abrogated by the Bankruptcy Code. Section 522(f) of the Bankruptcy Code may not be constitutionally applied to the security interests obtained by Security Industrial Bank or Liberty Loan Corporation in the instant cases.

ORDERED that the Complaints to Void Liens of Security Industrial Bank and Liberty Loan Corporation Under Section 522(f) of the Bankruptcy Code are dismissed.