In re Allan and Pauline SWEENEY, Willis R. Gifford and Jacqueline M. Gifford, Donald Dean Pfeffer, Sr. and Barbara Louise Pfeffer, Mark Anthony Price and Evelyn Mae Price, and Charles Jaeger, Debtors.

Allan SWEENEY and Pauline Sweeney, Plaintiffs,

v.

PACIFIC FINANCE COMPANY n/k/a Transamerica Financial Services, Defendant.

Willis R. GIFFORD and Jacqueline M. Gifford, Plaintiffs,

v.

THORP FINANCE CORPORATION, Defendant.

Donald Dean PFEFFER, Sr. and Barbara Louise Pfeffer, Plaintiffs,

v.

TRANSAMERICA/PACIFIC FINANCE CORPORATION, Defendant.

Mark Anthony PRICE and Evelyn Mae Price, Plaintiffs,

v.

THORP FINANCE CORPORATION, Defendant.

Charles JAEGER, Plaintiff,

v.

THORP FINANCE CORPORATION, Defendant.

Bankruptcy Nos. 80–00528, 80–01325, 80–01707, 80–01925 and 80–01942.

Adv. Nos. 80–324, 80–0248, 80–0267, 80–0301 and 80–0390.

United States Bankruptcy Court,

E. D. Wisconsin.

Dec. 22, 1980.

Hugh A. Ross, Jr., Milwaukee, Wis., for plaintiff debtors in Sweeney Case No. 80–00528.

Jeffrey S. Schuster, Milwaukee, Wis., for defendant in Sweeney Case No. 80–00528, Price Case No. 80–01925 and Jaeger Case No. 80–01942.

Michael J. Lund, Milwaukee, Wis., for plaintiff debtors in Gifford Case No. 80–01325.

Herbert Levine, Milwaukee, Wis., for defendant in Gifford Case No. 80–01325.

Michael J. Rynes, Milwaukee, Wis., for plaintiff debtors in Pfeffer Case No. 80–01707 and Price Case No. 80–01925.

Robert A. Kagen, Milwaukee, Wis., for defendant in Pfeffer Case No. 80–01707.

John L. Castellani, Milwaukee, Wis., for plaintiff debtor in Jaeger Case No. 80–01942.

Before HILGENDORF, IHLENFELDT and CLEVERT, Bankruptcy Judges.

DALE E. IHLENFELDT, Bankruptcy Judge.

In each of these cases, the plaintiff debtors seek to avoid nonpossessory, nonpurchase-money security interests in personal property, pursuant to § 522(f) of the Bankruptcy Code,[1] and the defendant creditors assert that § 522(f) is unconstitutional as applied to them, in that it violates the Fifth Amendment by depriving them of valuable and substantial property rights without due process of law. Because of the importance of the issue, these cases have been consolidated for the purpose of obtaining a uniformity of decision in this district.

The Bankruptcy Reform Act of 1978, of which § 522(f) is a part, was enacted on November 6, 1978 and given an effective date of October 1, 1979, with all bankruptcy cases filed after the latter date to be governed by the new law. The dates of the respective security agreements and the property here in issue are as follows:

| | | |
|---|---|---|
| Gifford: | October 4, 1978. | 1 25″ Sylvania TV Set Color, 1 5 x 7 Lamb Rug, 1 Maytag Dryer, 1 Maytag Washer, 1 19″ Sony-TV Set, 1 Ampex Model 354 Tape recorder, 1 pecan 7 x 7 Bookcase, 1 Ranch Oak Poker (table) |
| Sweeney: | June 29, 1979. | Household goods and furnishings |
| Price: | July 16, 1979. | Color television, rocker, 3 tables, sewing machine, 3 lamps, footstools, shotgun |
| Pfeffer: | August 7, 1979. | 3 tables, 2 lamps, 1 television set, 2 dressers, 1 sewing machine, 1 vacuum cleaner, 1 washer, 1 dryer, 1 air conditioner. |
| Jaeger: | June 27, 1980. | 1 RCA color TV set w/antenna *1 Harmon Kurdon 330B Receiver *1 Bic turntable *1 Sony Reel to reel tape recorder *2 Unilinear floor speakers *2 Homemade speakers 1 Ethan Allen 5-drawer dresser 1 Ethan Allen 7-drawer dresser 1 Ethan Allen large mirror 2 Ethan Allen 1 drawer lamp tables 1 Gold dressing chair |

---

1. Section 522(f) provides:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

In the *Jaeger* case, in addition to the constitutional defense, the defendant also contends that the purview of § 522(f) does not extend to the starred items.

The Bankruptcy Reform Act of 1978 has been in effect now for more than a year, long enough to have the constitutionality of § 522(f) discussed in numerous decisions by bankruptcy judges. They are fairly evenly divided in their views concerning the validity or invalidity of § 522(f). Citations to a number of them are given below.[2] We are unaware of any higher courts having reviewed any of these decisions on appeal. The principal bone of contention in these cases is the case of *Louisville Joint Stock Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) and its progeny. We believe it has been pretty thoroughly dissected and analyzed in the earlier cases listed below, and we express here our gratitude to those judges for their careful thought and effort of which we have had the benefit. It is not our intent to set forth our own warmed over discussion of that case's present significance vis-a-vis the power of Congress to establish bankruptcy laws. However, we do offer our view that while the Supreme Court has to some extent receded from or limited its holding in the *Radford* case, that case has never been directly overruled. We agree with Judge Anderson that "(T)he focus, therefore, is to the structure and terms of the particular statutes in question to rationalize their specific operation and effect and to determine whether they bear constitutional muster." *In re Rutherford*, 4 B.R. 510, 2 CBC2d 728, 730 (Bkrtcy.S.Ohio 1980).

■ In dealing with the issue of the constitutionality of legislation, we keep in mind certain guiding principles. While trial courts have the power to declare an act of Congress unconstitutional, they should proceed with caution and do so only in a clear case. It is a fundamental rule that there is a presumption in favor of the constitutionality of a legislative enactment, and in applying rules of statutory construction to legislation which is under attack, the courts should do so with a view to bringing the legislation into line with constitutional requirements, that is, favor that interpretation which gives it the greater chance of surviving the test of constitutionality. 16 Am.Jur.2d Constitutional Law §§ 159, 212, 219.

In the cases before us, we note that the security interest in the Gifford case was obtained prior to the enactment of the Bankruptcy Reform Act of 1978, three others were obtained in the interim period between the date of its enactment and its effective date, and finally, the security interest in the Jaeger case was obtained subsequent to the effective date of the Act. We turn first to the Gifford case.

■ In a number of cases discussing the constitutionality of § 522(f), the question was raised as to whether Congress intended it to have retroactive effect, and almost without exception, the courts have found that it was so intended. We do not understand the parties here to have contended to the contrary, but in any event, we would follow the reasoning in the earlier cases. We believe Congress intended that it apply to interests acquired prior to November 6, 1978, the date of enactment. The question then is whether it violates the defendant's constitutional rights when so applied.

2. *In re Boulton*, 4 B.R. 498, 6 BCD 233 (Bkrtcy. S.Iowa 1980); *In re Rutherford*, 4 B.R. 510, 2 CBC2d 728 (Bkrtcy.S.Ohio 1980); *In re Hawley*, 4 B.R. 147, 6 BCD 365 (Bkrtcy.Or.1980); *In re Hoops*, 3 B.R. 635, 6 BCD 273 (Bkrtcy.Colo. 1980); *In re Rodrock*, 3 B.R. 629, 6 BCD 267 (Bkrtcy.Colo.1980); *In re Jackson*, 4 B.R. 293, 6 BCD 612 (Bkrtcy.Colo.1980); *In re Head*, 4 B.R. 521, 6 BCD 489 (Bkrtcy.E.Tenn.1980); *In re Steinart*, 4 B.R. 354, 6 BCD 623 (Bkrtcy.W.La. 1980); *In re Ambrose*, 4 B.R. 395, 6 BCD 454 (Bkrtcy.N.Ohio 1980); *In re Beck*, 4 B.R. 661, 6 BCD 491 (Bkrtcy.C.Ill.1980); *In re Pierce*, 4 B.R. 671, 6 BCD 484 (Bkrtcy.W.Okl.1980); *In re Curry*, 5 B.R. 282, 2 CBC2d 710 (Bkrtcy.N. Ohio 1980); *In re Baker*, 5 B.R. 397, 6 BCD 747 (Bkrtcy.W.Mo.1980); *In re Primm*, 6 B.R. 142, 2 CBC2d 1170 (Bkrtcy.Kan.1980).

Section 522(f) had its inception in Section 4–503(f) of the proposed bankruptcy statute contained in the Report of the Commission on the Bankruptcy Laws of the United States. Part II at page 126. The Commission said that "non-purchase-money security interests should not be enforceable as to items of property essential to a debtor's well-being, such as wearing apparel, which are of little or no value to a creditor, other than as a means of coercing payment", Part I, page 169, and that "nonpurchase money security be unenforceable as to wearing apparel, household goods, and health aids." Part I, page 170.

Congress accepted the views of the Commission, as is shown in the legislative history of § 522(f).

"In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make." H.Rep.No.95–595, 95th Cong., 2nd Sess. (1978) 127, U.S.Code Cong. & Admin.News, pp. 5787, 6088.

The problem Congress was attempting to redress is also described in the discussion on "redemption."

". . . the secured creditor is able to deprive a debtor of even the most insignificant household effects, including furniture, cooking utensils, and clothing, even though the items have little if any realizable market value. However, the goods do have a high replacement cost,

and thus the creditor is able to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess." H.Rep. No.95–595, 95th Cong., 2nd Sess. (1978) 127, U.S.Code Cong. & Admin.News, p. 6088.

From the foregoing, it seems to us that the legislative purpose is very clear. Congress specified that § 522(f) should apply to certain limited categories of personal property which are necessities of family life and have little if any resale value from the creditor's standpoint, but have a relatively high replacement cost so far as the debtor is concerned. Experience had shown that creditors were able to use the threat of repossession of such goods, rarely carried out, in order to extract a reaffirmation of the debt from the debtor, thus impairing the fresh start which was intended to and would otherwise be afforded the debtor by the bankruptcy discharge.[3]

■ A close inspection of subsections (2)(A), (B) and (C) of § 522(f) shows that the property described therein and subject to its terms is identical, word for word, to the property exemptions granted in § 522(d)(3), (4), (6) and (9). Having in mind the congressional purpose as set out above, we believe that the impact of § 522(f) should be limited to those particular categories of exempted property, and that as so limited, the section is constitutional. For example, in some cases, the section has been applied to a motor vehicle, which has been found to be a "tool of the trade" of the debtor. We would not apply it in that fashion. As Congress has specifically and separately exempted motor vehicles in § 522(d)(2), we would not include them in

---

**3.** We note the Wisconsin legislature's response to this same problem, as contained in s. 422.-417(3) of the Wisconsin Statutes (1977):

"(3) With respect to a consumer loan, a lender may not take a security interest, other than a purchase money security interest, in:

(a) Clothing of the customer and his dependents and the following, if they are not fixtures: dining table and chairs, refrigerator, heating stove, cooking stove, radio, beds and bedding, couch and chairs, cooking utensils and kitchenware; or

(b) Real property if the obligation secured is less than $1,000.

(4) A violation of this section is subject to s. 425.304."

Section 425.304 provides for monetary damages and the imposition of monetary penalties for violation of the section.

the property described in § 522(d)(6).[4] Similarly, we do not believe that Congress intended that the so-called wild card exemptions of § 522(d)(1) and (5) should be subject to the lien avoidance provisions of § 522(f). The well-known rule that exemption statutes are to be liberally construed has been mentioned in a number of the decisions dealing with the validity of § 522(f), but it is important to remember that the direct thrust of the section in question deals not with the granting of exemptions, but with the *avoidance of liens.*

■ Even as to property clearly falling within the sections covered by § 522(f), we would tend toward a restrictive rather than a broad interpretation. *In re Ruppe*, 3 B.R. 60, 5 BCD 1404 (Bkrtcy.Colo.1980). For example, in the Jaeger case, the defendant has challenged the application of § 522(f) to what appears to be the component parts of a stereo. We agree that a stereo would fall within the definition of "household goods", *In re Beard*, 5 B.R. 429, 6 BCD 786 (Bkrtcy. S.Iowa 1980), but a factual issue remains concerning the application to this property of the limiting language in § 522(d)(3), "not to exceed $200 in value in any particular item."

■ We see no constitutional problem in applying § 522(f) to the security interests in the other cases before us, whether they were obtained in the interim period or subsequent to the effective date of the Code. Those creditors were on notice of the enactment of the statute and can claim no surprise concerning its impact on their purported lien rights. *In re Head*, 4 B.R. 521, 6 BCD 489 (Bkrtcy.E.Tenn.1980).

***

4. *The constitutional question before the court arises by reason of the retroactive effect of § 522(f). Note, however, that there are practical considerations insofar as future application is concerned.*

*If repairmen using panel trucks or truckers using over the road truck-tractors in their work should have a breakdown necessitating costly* repairs, it will be extremely difficult if not impossible for them to obtain a loan to finance repairs, using the vehicle as collateral, if such motor vehicles are permitted to be classified as tools of the trade under subsection (6), exempted under the dollar limitations of ss. (1), (2), (5) and (6), and this entire amount then subjected to the lien avoidance provisions of § 522(f).