In re Robert Michael DILLON, Mary Jane Dillon, dba Wolverine Trucking Company, Debtors.

ASSOCIATES COMMERCIAL CORPORATION, a corporation, Plaintiff,

v.

Robert Michael DILLON, et al., Defendants.

Bankruptcy No. 281–03225–D–7.
Adv. No. 281–1008.

United States Bankruptcy Court,
E. D. California.

March 10, 1982.

Wax, Howard, Searle & Morrone, San Jose, Cal., for plaintiff.

Maloney, Meyer & Sample, Placerville, Cal., for defendants.

### MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

### STATEMENT OF THE FACTS

Robert M. Dillon and Mary J. Dillon, dba Wolverine Trucking Company and the debt-ors in these bankruptcy proceedings (debt-ors hereinafter), purchased a 1973 Freightliner cab-tractor from Associates Commercial Corporation (Associates hereinafter), pursuant to a contract of sale. On February 26, 1981, that contract was either entirely or almost entirely paid off; however, Associates retained the certificate of ownership.

On February 26, 1981, the debtors entered into another contract of sale to purchase a 42½ foot utility flatbed trailer from Utility Trailer Sales. The contract was assigned by Utility to Associates. The debtors were unable to make a cash down payment on the trailer, and in lieu thereof, the debtors granted to Associates a security interest in the cab-tractor as additional collateral. Associates timely perfected its security interest in the cab-tractor, retaining the ownership certificate and remaining legal owner thereon. The total purchase price of the trailer was financed by Associates.

The debtors kept their payments current on the trailer through May 18, 1981. However, on June 18, 1981, Mr. Dillon, while driving the tractor-trailer rig, was involved in a traffic accident wherein both the cab-tractor and the trailer were damaged. The debtors did not meet their June installment obligation nor any obligations becoming due thereafter, and as a consequence thereof, Associates repossessed the trailer. The cab-tractor remained in a repair garage where it became subject to a mechanic's lien for repair work performed.

On August 31, 1981, Mr. and Mrs. Dillon filed a joint voluntary petition for relief under Chapter 7 of the 1978 Bankruptcy Code. In their exemption Schedule B–4, the debtors elected the following exemptions: (1) $500.00 in a Dodge pickup, pursuant to 11 U.S.C. Section 522(d)(5); (2) $200.00 in a Valco boat, pursuant to 11 U.S.C. Section 522(d)(5); (3) $400.00 in a Coleman trailer, pursuant to 11 U.S.C. Section 522(d)(5); and $16,200.00 in the 1973 Freightliner cab-tractor and the utility

trailer, pursuant to 11 U.S.C. Section 522(d)(5) and (6). The $16,200.00 claimed exemption in the cab-tractor and trailer has become the subject of the instant lawsuit.

On October 20, 1981, Associates filed a complaint for relief from automatic stay and for a turnover order concerning the cab-tractor and the trailer. In their answer thereto the debtors asserted as an affirmative defense that the plaintiff's lien may be avoided pursuant to 11 U.S.C. Section 522(f) to the extent of $16,200.00.

*Issue*: May the lien avoidance provisions of Section 522(f) be asserted by the debtors to avoid a lien in a cab-tractor and trailer claimed to be exempt under the tools of the trade exemption (Section 522(d)(6) and the "wild card" exemption of Section 522(d)(5)?

## DISCUSSION

### *The Nature of the Lien*

In order to satisfy the provisions of 11 U.S.C. Section 522(f), the lien to be avoided must be nonpurchase money and nonpossessory.

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property *to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section,* if such lien is—

(1) a judicial lien; or

(2) a *nonpossessory, nonpurchase money* security interest in any—

(A) household furnishings, . . .

(B) implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

(C) professionally prescribed health aids . . . . 11 U.S.C. § 522(f). (Emphasis added.)

▇▇ Associates' lien in the trailer is clearly a purchase money lien because it attached to the item actually purchased and thus it is not subject to being set aside by the debtors pursuant to 11 U.S.C. Section 522(f). However, Associates also asserts

that the lien in the cab-tractor is a purchase money security interest because it was obtained in lieu of a cash down payment on the trailer and as part of a purchase money transaction. This assertion flies in the face of the plain meaning attached to "purchase money security interest." That term infers that the security interest must be taken in the item actually purchased. The Bankruptcy Court in *In re Scott*, 5 B.R. 37, 2 CBC 1012, arrived at an identical interpretation. In *Scott* the Court stated, "that for a purchase money security interest to come within exception from filing requirement, the security interest must be in the items purchased and cannot exceed the price of what is purchased in the transaction wherein the security interest is created. *In re Manuel*, 507 F.2d 990 (CCA 5th, 1975). The Court concluded that the statutory exemption from filing did not apply as the seller did not have a purchase money security interest."

Upon the instant facts it is evident that the Associates' lien was upon the item actually purchased (the Utility trailer) and upon the cab-tractor, an item not then purchased but which was offered as additional collateral for the sales contract. It follows that the lien created in the cab-tractor was a nonpurchase money lien.

Associates additionally asserts that the lien on the cab-tractor is possessory because the cab-tractor is in the custody of a repair garage which holds a mechanic's lien on the cab-tractor and refuses to release it without the consent of Associates as the legal owner.

Section 9–305 of the Uniform Commercial Code controls the perfection of a security interest by taking possession. U.C.C. 9–305 provides:

"A security interest in . . . goods, instruments . . . may be perfected by the secured party's taking possession of the collateral."

Comment 2 of Section 9–305 states:

". . . possession may be by the secured party himself or by an agent on his behalf; it is of course clear that the debtor

or person controlled by him cannot qualify as such an agent for the secured party."

In the instant case, the repair garage has actual possession of the cab-tractor. No evidence was submitted to show that the repair garage had any agency relationship with Associates. At the time of the accident and at all times thereafter, debtors had the right to possess the cab-tractor; therefore, the repair garage should be considered as debtors' agent. Because Associates did not lawfully take possession of the cab-tractor, nor did one of its agents, the security interest was not perfected by possession pursuant to Section 9–305 of the Uniform Commercial Code. Nor was Associates' lien perfected by constructive possession. The Ninth Circuit Court of Appeals has rejected the argument that "constructive possession" is sufficient to satisfy the requirements of U.C.C. 9–305 in the case of *Staff v. Huffman* (9th Cir. 1977) 550 F.2d 1228.

Associates' lien in the trailer may not be avoided by the debtors pursuant to Section 522(f) of the Code because it does not meet the requirement of that Code section that the lien be "nonpurchase money." The lien in the cab-tractor, on the other hand, is nonpurchase money and nonpossessory and is the proper subject of the avoidance provisions of Section 522(f).

### Section 522(f): Impairment of an Exemption

In addition to the requirement that the lien be "nonpurchase money" and "nonpossessory," Section 522(f) further requires "that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, ..."

Subsection (b) of 522 permits the debtor to elect either the state scheme of exemptions or the federal scheme of exemptions. In the instant case, the debtors have elected the federal exemptions and specifically, each debtor has individually elected the tools of the trade exemption in the cab-tractor pursuant to 11 U.S.C. 522(d)(6). Each debtor has also elected the "wild card" ex-

emption of 11 U.S.C. 522(d)(5) in the cab-tractor. The total exemption claimed by the debtors in the cab-tractor is $16,200.00.

Together, the debtors claim a tool of the trade exemption in the cab-tractor under 11 U.S.C. 522(d)(6) in the amount of $1,500.00 ($750.00, plus $750.00). Although Mrs. Dillon was a principal in Wolverine Trucking Company, there is no evidence to show that the cab-tractor was a tool of her trade or of her dependent. The general rule is that a motor vehicle may qualify as a tool of the trade if it is necessary for and is used in connection with one's trade. *In re Dubrock*, 5 B.R. 353 (Bkrtcy.1980); *In the Matter of Tevis*, 12 B.R. 219 (Bkrtcy.1981). Since there is no evidence that the wife actually used or drove the cab-tractor in the trucking business, as to her, the cab-tractor does not qualify as a tool of the trade.

However, Mr. Dillon actually drove the cab-tractor in the trucking business up to the date that it was damaged in the accident of June 18, 1981. The fact that the cab-tractor has been in the repair garage since that date and therefore has been unavailable for his use creates no inference that the cab-tractor is no longer a tool of his trade. The husband, Mr. Dillon, qualifies for the tool of the trade exemption pursuant to 11 U.S.C. 522(d)(6). Therefore, between Mr. and Mrs. Dillon they are entitled to a single tool of the trade exemption in the amount of $750.00.

To the extent that the Associates' lien on the cab-tractor impairs this $750.00 exemption, the debtors are entitled to set the lien aside pursuant to 11 U.S.C. 522(f).

Both Mr. and Mrs. Dillon have claimed an additional "wild card" exemption in the cab-tractor pursuant to 11 U.S.C. 522(d)(5). This subsection permits an exemption in "(5) the debtors aggregate interest, not to exceed in value $400.00 plus any unused amount of the exemption provided under paragraph (1) of this subsection, in any property." The debtors have claimed no homestead exemption under 522(d)(1) and therefore they are entitled to an additional $15,800.00 exemption ($7,500.00, plus

$7,500.00, plus $400.00, plus $400.00) in any property.

The debtors have expended $1,100.00 of their combined Section 522(d)(5) "wild card" exemption by electing $500.00 in their Dodge pickup, $200.00 in their Valco boat, and $400.00 in their Coleman trailer. Therefore, there remains $14,700.00 to be applied towards the cab-tractor. The debtors may properly apply this amount as an exemption in their cab-tractor.

■ The debtors next attempt to avoid the Associates' lien pursuant to Section 522(f) to the extent that it impairs this $14,700.00 "wild card" exemption. This attempt raises the difficult issue of whether or not Section 522(f) can be applied to avoid a lien which is not listed in subsection (2)(A), (B) or (C) of Section 522(f), but nevertheless impairs a legitimate exemption claimed by the debtors.

The resolution of this issue necessarily requires an interpretation of the language of Code Section 522(f). The Bankruptcy Court in the case of *In re Sweeney*, 7 B.R. 814 (1980), put a restrictive interpretation on the language of 522(f) and held that since the "wild card" exemption is not specifically mentioned in subsection (2) of Section 522(f), Congress did not intend that section to apply for the purposes of avoiding a lien which impairs the "wild card" exemption. The Court stated, ". . . we do not believe that Congress intended that the so-called 'wild card' exemptions of Section 522(d)(1) and (5) should be subject to the lien avoidance provisions of Section 522(f). The well-known rule that exemption statutes are to be liberally construed has been mentioned in a number of cases dealing with the validity of Section 522(f), but it is important to remember that the direct thrust of the section in question deals not with the granting of exemptions, but with the avoidance of liens."

The *Sweeney* analysis fails to recognize that if a creditor's lien in an exemption is not avoided, the effect of that exemption is a nullity, for the debtor's exemption may be wiped out by the creditor's lien. To give effect to the exemptions provided by Congress, it is necessary to read the provisions of the Code in conjunction with one another. When this is done, as is required in any statutory interpretation, the provisions of section 522(f) must be interpreted broadly enough to cover the avoidance of a lien which impairs an exemption to which the debtor is entitled under subsection (b). The specific language of Section 522(f) is, "the debtor may avoid the fixing of a lien on an interest of the debtor to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) . . . ."

Congressional intent seems clearly stated in House Report No. 95–595, 95th Cong., 1st Sess. 362 (1977); Senate Report No. 95–989, 95th Cong. 2d Sess. 76 (1978), U.S. Code Cong. & Admin. News (1978) pp. 5787, 6318, under subsection (e) printed under Legislative History to Section 522, as follows:

"Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase-money security interest in certain household and personal goods."

Without question, in the instant case, the cab-tractor could have been exempted by the debtors in the absence of Associates' lien, using the tool of the trade exemption of $750.00 and the "wild card" exemption of $14,700.00 for a total of $15,450.00. Such being the case, to give meaning to the intent of Congress to protect the debtors' exemptions (which Associates' lien, if not avoided, would negate) and to protect the debtors' fresh start (which would be adversely affected by depriving debtor of his tools of the trade), the nonpossessory nonpurchase money lien may be avoided to the extent it impairs the exemption of debtors under Section 522(b), which in this case is the first $15,450.00 in value of the cab-tractor.

This analysis is consistent with the rationale and conclusions of the Bankruptcy Court in the case of *In re Dubrock*, 5 B.R. 353 (1980). This Court disagrees with the restrictive holding of *In re Sweeney, supra.*

## CONCLUSION

The debtors, Mr. and Mrs. Dillon, claimed an exemption in their cab-tractor in the amount of $16,200.00. They are entitled to claim exemptions in the amount of $15,-450.00 ($750.00 as tools of the trade for Mr. Dillon and $14,700.00 as "wild card" exemptions for both Mr. and Mrs. Dillon). The fact that no objection has been made to the excess claimed to be exempt does not affect the creditor whose lien is to be avoided. *In the Matter of Augustine*, 7 B.R. 565, 5 CBC 536 (Bkrtcy.).

Therefore, pursuant to the above analysis, the nonpurchase money, nonpossessory lien held by ASSOCIATES in the cab-tractor or the sales proceeds thereof may be avoided by the debtors to the extent of their legitimate exemption of $15,450.00 therein. Any amount over and above that $15,450.00 remains subject to Associates' lien as does the trailer or the sales proceeds thereof.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law. Counsel for defendants will prepare and submit a judgment consistent herewith.