In re William Edward METZIG, a/k/a Bill Metzig and Gwendolyn Metzig, a/k/a Gwen Metzig, d/b/a M & M Enterprises, Debtors.

William Edward METZIG, a/k/a Bill Metzig and Gwendolyn Metzig, a/k/a Gwen Metzig, d/b/a M & M Enterprises, Plaintiffs,

v.

BANK OF THE WEST, Defendant.

Bankruptcy No. 582–00220.
Adv. No. 583–0066.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Sept. 22, 1983.

Richard Forcum, Lubbock, Tex., for plaintiffs.

Robert A. Doty, Lubbock, Tex., for defendant.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

William Edward Metzig and Gwendolyn Metzig filed joint petition for order for relief under Chapter 7 of Title 11, United States Code on December 30, 1982. Gwendolyn Metzig claimed the family exemptions provided by Texas law in V.A.T.S. 3833 and 3836. William Edward Metzig claimed the federal exemptions provided by § 522(d). Bank of the West, ("Bank"), claiming to be a secured creditor of the debtors, filed objections to the exemptions claimed by the debtors. The debtors, in turn, filed complaint against the Bank pursuant to § 522(f), seeking to avoid the bank's claimed lien against tools of trade. The following summary constitutes the findings of fact after nonjury trial.

William Edward Metzig ("Metzig"), at all times material to this memorandum, had been engaged in the business of remodeling homes and commercial buildings. As a sole proprietor he had accumulated over the years a large amount of tools and equip-

ment which are necessary to the efficient and proper conduct of that business. In his exemption claim he values his saws, air compressors, spray rigs, staple guns, welding equipment, drills, mechanics tool boxes, and a large number of miscellaneous tools and equipment at the sum of $8,650.00.[1]

The bank's challenge to those exemptions is three-fold. It contends that its lien was created prior to the effective date of § 522(f) and that section may not be retroactively applied, it contends that some of the items listed in the exemption claim are not properly in the category of "tools of the trade" and thus the lien against those specific items may not be avoided under § 522(f), and it contends that if the debtor is permitted to avoid the bank's lien under § 522(f) debtor is limited to the specific exemption provided by § 522(d)(6) of $750.00 and may not avoid any lien where the exemption is based on the "wild card" or "spillover" provisions of § 522(d)(5).

■ The issue as to whether one may avoid the lien against tools of trade which are exempted under the spillover provisions of § 522(d)(5) is by far the most controversial of the three challenges presented by the bank and will be discussed first.

The bank contends that the issue is not whether the "spillover" provisions are available to provide the exemption, but whether a properly fixed, consensual lien might be avoided when Congress had no apparent intent to permit that result. In support of its argument it cites *In re Sweeney*, 7 B.R. 814 (Bkrtcy.E.D.Wis.1980).

*Sweeney* involved debtors who sought to avoid many nonpossessory, nonpurchase money security interest in various items of household furniture and furnishings where the "wild card" or "spillover" provisions of § 522(d)(5) were utilized to cover the value in excess of the specific exemption provided by § 522(d)(3). The bankruptcy judge reviewed the legislative history of § 522(f) and cited the well known principle that the basic Congressional intent in providing a

debtor with avoiding rights in certain limited categories of personal properties, such as household furniture and furnishings, was that those items are necessities of family life and have little if any resale value from the creditors standpoint, but have a relatively high replacement cost to the debtor. Congress specifically limited those items against which a nonpossessory, nonpurchase money security interest might be avoided, to household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, and jewelry held primarily for the personal, family, or household use of the debtor or a dependent, implements, professional books, or tools of the trade of the debtor or a dependent and professionally prescribed health aids for the debtor or a dependent. Under § 522(d) it limited the specific exemption in household furnishings, household goods, wearing apparel, appliances, books, animals, crops or musical instruments to the debtor's interest, not to exceed $200.00 in value in any particular item, it limited the specific exemption in jewelry held primarily for the personal, family or household use of the debtor or a dependent to the debtor's aggregate interest, not to exceed $500.00 in value, and it limited the specific exemption in implements, professional books or tools of the trade of the debtor or the trade of a dependent of the debtor to the debtor's aggregate interest, not to exceed $750.00 in value. The bankruptcy judge in *Sweeney* placed much importance on the fact that the property described in § 522(f) against which a security interest could be avoided is identical to the wording in those provisions of § 522(d)(3)(4)(6) and (9) which provides the specific exemptions. Therefore, the court limited the impact of § 522(f) to those particular categories of exempted property, concluding that Congress did not intend that the so called "wild card" exemptions of § 522(d)(1) and (5) should be subject to the lien avoidance provisions of § 522(f).

The analysis in *Sweeney* has appeal. The legislative history of § 522(f) can be fairly

---

**1.** Coincidentally that figure is the same as the total of $750.00 provided by § 522(d)(6) as the value of tools which may specifically be ex-

empted, and the $400.00 "wild card" and $7,500.00 "wild card" exemption provided by § 522(d)(5).

interpreted as evidencing Congressional intent to preserve to the debtor those essential items of household furniture, health devices, wearing apparel, and tools of trade which have only nominal value to a creditor, but could be used by that creditor as a means of coercing payment from a debtor where the replacement cost far exceeded the resale value:

"In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make." H.R. No. 95–595, 95th Cong.2d Sess. (1978) 127, U.S.Code Cong. & Admin.News pp. 5787–6088.

Arguably, Congress, by providing a specific exemption in tools of trade to the aggregate value of $750.00, was seeking to preserve to an automobile mechanic, a plumber, or some other tradesman who possessed only a nominal amount of tools a means to continue his livelihood.

Regardless of its attraction *Sweeney* has spawned no progeny. The reported cases have rejected that argument, concluding that if Congress did not intend for avoidance of liens against those items of personal property described in § 522(f), but which are exempted under the "spillover" provisions of § 522(d)(5), it would have so provided. *See* e.g. *Augustine v. United States of America, Farmers Home Administration,* 675 F.2d 582 (3rd Cir.1982) (FmHA lien against farm equipment where, in part, exemption claimed under § 522(d)(5) was avoided. "We must assume that Congress understood that the language of that subsection—that the debtor may avoid a lien on property 'to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section'—compels the result that subsection (d) exemptions may be applied to

the kinds of property subject to lien avoidance under subsection (f). Nothing in § 522 suggests a distinction that would prohibit aggregation for purposes of lien avoidance while permitting it for exemption purposes"); *Kay Bank N.A. v. Duchesne,* 21 B.R. 390 (N.D.N.Y.1982) ("while the report refers to the protection to be afforded to a consumer-debtor against the threat of a lending institution to repossess tools of little market value as a matter of leverage in bankruptcy proceedings, there is no indication of a congressional intent to limit the debtor's avoidance powers under § 522(f) to such situations. Indeed a debtor who does not claim a residential real property exemption may claim an exemption for tools and implements of his trade to a total value of $8,650.00. The debtor here is entitled to the exemption of so much of the inventoried equipment as constitutes the tools and implements of his trade, free of any nonpossessory, nonpurchase security interests held by the bank"); *In re Dipalma,* 24 B.R. 385 (Bkrtcy.D.Mass.1982) (*Sweeney* specifically rejected); *In re Hawley,* 24 B.R. 42 (Bkrtcy. MD PA 1982); *In re Reed,* 18 B.R. 1009 (Bkrtcy.W.D.Ky.1982) (court limited lien avoidance to property of $750.00 in value, but in footnote advised debtor that he could avail himself of the general exemption provided in § 522(d)(5) to avoid lien against balance); *In re Dillon,* 18 B.R. 252 (Bkrtcy. E.D.Cal.1982) (specifically rejects *Sweeney*); *In re Eagan,* 16 B.R. 439 (Bkrtcy.N. D.N.Y.1982) (specifically rejects *Sweeney*); and *In re Dubrock,* 5 B.R. 353 (Bkrtcy.W.D. Ky.1980).

Although it is my notion that Congress did not foresee this result a plain reading of the applicable statutes does not negate the result. I must deny the challenges by the bank to the exemptions claimed by the debtors and, except as hereinafter set forth, I conclude that the debtors may avoid the bank's nonpossessory, nonpurchase money lien against tools of trade.

■ The bank contends that some of the items are not in fact tools of trade. However, the only items contained on the list of tools and equipment which I can find are not properly exempted as tools of trade are

the 1971 one-half ton Chevrolet pickup truck, the items of inventory including, but not necessarily limited to, salvage lumber, door and window units and fixtures, picture frame molding, finished frames, rough and finished stock and other items that obviously are inventory, metal filing cabinets, and office furniture and office equipment. Those items, while they may be exempted under the "wild card" or "spillover" provisions of § 522(d)(5), are not tools of trade against which a lien may be avoided under § 522(f).

■ Finally, I reject the bank's argument that § 522(f) cannot be applied retroactively to it. It is true that the bank's initial dealings with the debtor occurred, and their original notes and security devices were executed, long prior to the effective date of the Bankruptcy Code. However those notes and security devices have been renewed and extended on many occasions, the last of which occurred in 1982 after the effective date of the Bankruptcy Code.

It is, therefore, ORDERED by the Court that:

1. The challenges by Bank of the West to the exemptions claimed by the debtors, William Edward Metzig and Gwendolyn Metzig, be, and they are hereby, overruled and denied; and

2. The nonpossessory, nonpurchase money lien held by Bank of the West against tools of trade of the debtors be, and it is hereby, avoided to the extent of $8,650.00 and held for naught.

LET JUDGMENT BE ENTERED ACCORDINGLY.