**In re David Leo BRZEZINSKI, Gail May Brzezinski, Debtors.**

**Bankruptcy No. WF7–85–00517.**

United States Bankruptcy Court, W.D. Wisconsin.

July 1, 1985.

temptation for the debtor's attorney to deviate from his duty of undivided loyalty to his client, the corporate debtor.")

John W. Kelley, Jerry W. Slater, Kelley, Weber, Pietz & Slater, S.C., Wausau, Wis., for Production Credit Ass'n.

Terrence J. Byrne, Wausau, Wis., for debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER DENYING OBJECTION TO EXEMPTIONS AND GRANTING LIEN AVOIDANCE

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Debtors David L. and Gail M. Brzezinski have claimed as exempt and made application to avoid liens on certain property included in their schedules accompanying their voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 101 et *seq.;* Creditor Production Credit Association (PCA) is contesting Debtors' exemption claims and their motion for avoidance of PCA's lien; a hearing having been held on this matter with PCA appearing by Attorney John W. Kelly (Attorney Jerry W. Slater on brief) and the Debtors appearing personally and by Attorney Terrence J. Byrne; briefs having been filed; the Court being fully advised in the premises, FINDS THAT:

1. Debtors filed a Chapter 7 bankruptcy petition on March 26, 1985, listing certain property as exempt on Schedule B–4 of their petition.

2. On March 29, 1985, Debtors filed an application to avoid the PCA lien on the claimed exempt property.

3. On April 13, 1985, all of the property at issue in this proceeding was sold at auction. The auction proceeds are currently in a trust account of PCA's attorney.

## DISCUSSION

4. The specific contested property which has been claimed as exempt by the Debtors under sec. 522(b)(2) of the Bankruptcy Code and sec. 815.18(6), Stats.,[1] is an Owatonna 9–foot mower conditioner, a New Holland baler and an amount of feed stipulated by the parties to be the necessary feed for eight cows for one year under sec. 815.18(6), Stats. The mower-conditioner and baler have been respectively claimed as an exempt mower and hay loader under sec. 815.18(6), Stats.

5. PCA objects to these claimed machinery exemptions arguing that the items claimed as exempt do not perform the same functions as those implements included in the statute. As support it cites *In re Flake*, 33 B.R. 275 (Bankr.W.D.Wis.1983). In *Flake*, Judge Martin sustained objections to two pieces of claimed exempt machinery because the machines contained in the statute were different in character and performed a substantially different function in the harvesting of crops than the ones claimed as exempt. *Id.* at 276. He pointed out that there was no evidence from which he could find that the debtors' modern implements are the direct successors in farm operations to the now rarely used implements of the statute. *Id.*

6. A court's statutory interpretation is to be guided by not only a statute's exact words but also its apparent purpose. *Dielectric Corporation v. Labor and Industry Review Commission*, 111 Wis.2d 270, at 277, 330 N.W.2d 606 (1983). The obvious purpose of sec. 815.18(6), Stats., is to provide an exemption for each of the items listed including a mower and hayloader. Interpreting sec. 815.18(6) in such a way as to disallow exemptions for machinery which has been technologically advanced would ignore this purpose and render portions of the statute meaningless. A construction of a statute rendering a portion of it meaningless must be avoided. *State v. ILHR Dept.*, 101 Wis.2d 396, at 404, 304 N.W.2d 758 (1981).

7. Guided by these general rules of statutory construction the Court determines that the Owatonna mower-conditioner and New Holland baler serve the same basic functions as the mower and hayloader contained in sec. 815.18(6). At the hearing on this matter Leo Martin, from the University Extension farm office, testified that both machines basically serve the same purpose as the statutory mower and hayloader. The fact that modern technology allows them to perform additional functions does not alter this situation. Interestingly, Mr. Martin noted that he had not seen a hayloader in use in this area for at least 30 years. The Court concludes that these machines may be exempted under

1. Wis.Stat. § 815.18(6) provides:
   815.18 Property exempt from execution.
   No property hereinafter mentioned shall be liable to seizure or sale on execution or on any provisional or final process issued from any court or any proceedings in aid thereof, except as otherwise specially provided in the statutes:

   .    .    .    .    .    .

   (6) LIVESTOCK, FARM IMPLEMENTS AND AUTOMOBILE. Eight cows, 10 swine, 50 chickens, 2 horses or 2 mules, one automobile of the debtor not exceeding $1,000 in value, 10 sheep, and the wool from the same, either in the raw material or manufactured into yarn or cloth; the necessary food for all the stock mentioned in this section for one year's support, either provided or growing or both, as the debtor may choose; also one wagon, cart or dray, one sleigh, one plow, one drag, one binder, one tractor not to exceed in value the sum of $1,500, one corn binder, one mower, one springtooth harrow, one disc harrow, one seeder, one hay loader, one corn planter, one set of heavy harness and other farming utensils, also small tools and implements, not exceeding $300 in value.

sec. 815.18(6).[2] This Court's conclusion is strengthened by the Wisconsin Supreme Court's edict that:

It is well settled that exemption laws must have a liberal construction, within the limits contemplated by the legislature, so as to secure their full benefit to the debtor,....

*Opitz v. Brawley,* 10 Wis.2d 93, at 95–96, 102 N.W.2d 117 (1960).

■ 8. PCA as a further basis of its objection asserts that Debtors have abandoned farming as a trade and are therefore not entitled to exemptions for farm machinery or animal feed. Exemption rights are determined based on the circumstances present at the time of filing. *Mansell v. Carroll,* 379 F.2d 682 (10th Cir.1967); *In re Rivera,* 5 B.R. 313, at 315 (Bankr.M.D.Flor. 1980) Changes occurring after filing are not relevant. *Rivera, supra.* Debtors at the time of filing were in possession of the animal feed and machinery claimed as exempt. Seventeen days later at voluntary auction this farm machinery and animal feed was sold, along with other property. This auction does not alter the situation in any meaningful sense. At the time of filing their bankruptcy petition Debtors were entitled to the disputed exemptions under sec. 815.18(6).

9. Pursuant to sec. 522(f)(2)(B) of the Code Debtors have sought to avoid PCA's lien on certain farm equipment claimed as exempt under sec. 815.18, Stats. PCA claims that this property is not implements or tools of the trade of the Debtors, as required by the Code, because the Debtors have abandoned farming. The Court cannot accept such a narrow interpretation. The essence of the Bankruptcy Code is to provide debtors with a fresh start. David Brzezinski testified that he had been in farming his whole life and desired to farm again as soon as possible. He suggested that he would be interested in renting some land to farm. A farmer who is forced by financial difficulties to take on another type of employment cannot be viewed as abandoning farming when he expresses an intent to farm again when financially able. This is especially the case where there is no evidence that future farming, such as under a lease agreement, is impossible. This rationale was applied by the court in *In re Pommerer,* 10 B.R. 935 (Bankr.D.Minn. 1981).

■ 10. PCA argues that if the Court allows the Debtors to successfully avoid its lien Debtors will receive a windfall of $15,-800, which is the amount received at auction for the claimed tools and implements. Debtors are free to dispose of unencumbered property which qualifies for an exemption in any manner they choose. At any rate, if Debtors had not sold their feed, tools and implements PCA would be in the identical position it is presently in since it would have no claim against the property.

■ 11. The fact that the property which qualified for an exemption on the date of the bankruptcy filing is no longer possessed by the Debtors does not render the Debtors unable to avoid a lien on that property. The auction at which Debtors' property was sold had been scheduled before the filing of Debtors' bankruptcy petition. Subsequent to commencement of the case the parties mutually agreed that the auction should be held as scheduled and arranged to have certain proceeds held in trust pending this Court's decision. Under these circumstances it would be inequitable to deny Debtors' lien avoidance application based on their failure to possess the property.

12. PCA claims that any lien avoidance that is allowed by the Court under sec. 522(f)(2) of the Code should be limited to $750. It cites *In re Sweeney,* 7 B.R. 814 (Bankr.E.D.Wis.1980) as support for this proposition. The Court in *Sweeney* correctly noted that the items listed in sec. 522(f)(2)(A), (B) and (C) for lien avoidance purposes are identical to those listed in sec. 522(d)(3), (4), (6) and (9) for exemption claims. *Id.* at 818. It then determined

---

**2.** It should be noted that this decision is not in conflict with Judge Martin's decision in *Flake,* *supra,* since different pieces of machinery are involved.

that liens could only be avoided to the extent that the exemptions could have been taken under sec. 522(d)(3), (4), (6) and (9) regardless of whether those subsections were actually employed. *Id.* at 818–19.

■ 13. This Court reaches a different conclusion. Debtors who choose state exemptions may avoid liens under sec. 522(f)(2) but only as to exempt property that is of the same kind as that listed in sec. 522(d)(3), (4), (6) and (9). *In re Moore,* 5 B.R. 669 (Bankr.S.D.Ohio 1980). The plain language of sec. 522(f)(2) makes this clear. Since the property exempted by the Debtors in this case under Wisconsin law is the same kind as implements or tools of the trade under sec. 522(d)(6), lien avoidance is allowed.

■ 14. Reading the dollar limitations of sec. 522(d)(3), (4), (6) and (9) into the lien avoidance provisions because of identical language takes matters too far. Congress must have known that certain property could qualify as exempt under more than one subsection of sec. 522(d); in this case as either an implement or tool of the trade under subsection (6) or as a state exemption under subsection (2). With this logically presumed Congressional knowledge, one can only conclude that if Congress intended the dollar limitations of sec. 522(d)(3), (4), (6) and (9) to universally apply to lien avoidance on that kind of property it would have specifically so stated.

15. The introductory portion of sec. 522(f) states that a lien may be avoided to the extent that it impairs an exemption to which the Debtor would have been entitled under sec. 522(b). If a $750 limit is imposed here this portion of sec. 522(f) largely loses its meaning. The Debtors would no longer be able to avoid the PCA lien up to the amount of their entitled state exemption. The Code should be interpreted so as to avoid rendering sec. 522(f) essentially meaningless or at best ambiguous. This is especially true when an interpretation not applying the $750 limit of sec. 522(b)(6) is in furtherance of the Code's broad goal of debtor rehabilitation, as noted in *In re Di-*

*palma,* 24 B.R. 385, at 390 (Bankr.D.Mass. 1982).

16. PCA's final assertion is that if the Court does not apply a $750 limit to Debtors' lien avoidance it should apply a $300 limit from sec. 815.18(6), Stats. The $300 limit from that exemption section does not apply to the machinery that is in dispute in this case.

## CONCLUSIONS OF LAW

1. Debtors are entitled to the exemptions they have claimed on Schedule B–4 of their bankruptcy petition, including the amount of feed stipulated by the parties to be the necessary feed for eight cows for one year. Debtors have withdrawn their claim for exemption of the 900 Fox chopper with two heads.

2. Debtors are additionally entitled to avoid PCA's lien on the farm implements and tools of the trade contained in their application to avoid lien.

3. Such lien avoidance is not limited to the $750 amount contained in 11 U.S.C. § 522(d)(6).

4. The lien avoidance may be exercised to the extent of the applicable exemption amounts contained in Debtors' Schedule B–4.

## ORDER

IT IS ORDERED THAT:

1. PCA's objection to Debtors' claimed exemptions is DENIED.

2. Debtors are granted lien avoidance in accordance with their application and the Court's Conclusions of Law.

3. PCA's attorney is directed to turn over the auction proceeds he is holding in trust which were derived from items which the Court has ruled may be exempted and for which lien avoidance has been granted.